THE GREAT WESTERN RAILROAD COMPANY OF 1859

*v.*

MAHLON HAWORTH, JAMES W. HAWORTH AND A. LITZEN-BERGER.

SAME

*v.*

MAHLON HAWORTH AND JAMES W. HAWORTH.

1. EVIDENCE—*its materiality.* In an action against a railroad company, to recover damages for setting fire to a warehouse by sparks escaping from a passing locomotive, the master mechanic of the company testified, on their behalf, that the spark-arrester used on that locomotive was the best known and in use, and he knew it was in good repair at the time the fire occurred. On cross-examination, he stated that it was his business to know the condition

of every engine before each trip, and that he knew the condition of this engine from the uniform course of business in the shop, but could not state when he made a personal examination of the engine in question. On a re-examination the defendant asked: " What was the uniform course of business in the shop ?" It was held not material that the witness should explain in detail the course of business in the shop, having already stated, on behalf of the party asking this question, that the spark-arrester was in good condition, and that he knew that fact from the uniform course of business in the shop, and it was not error to refuse to allow it to be answered.

2.  SAME—*on cross-examination and re-examination.* While the plaintiff might properly have asked the question referred to, on cross-examination, the defendant, who called the witness, had no right to ask it on a re-examination.

3.  NEGLIGENCE *in railroads—destruction of property by sparks from a locomotive.* In a suit against a railroad company to recover damages for the destruction of a warehouse and goods stored therein by fire, occasioned by sparks escaping from a passing locomotive, if it appeared that there was employed a greater amount of steam than was necessary on the engine, by reason of which an undue quantity of sparks was emitted, that would constitute negligence on the part of the company, if such unnecessary employment of the steam caused the destruction of the property.

4.  SAME—*what constitutes negligence generally.* Negligence is the opposite of care and prudence; it is the omission to use the means reasonably necessary to avoid injury to others, and is not a legal question, but is one of fact, to be proved like any other.

5.  In granting to railroads their franchises, it was designed that they should use them with all reasonable and practicable care; and the law requires them to exercise their privileges in such manner as to prevent, as far as possible, any injury to others.

6.  Railroad companies will be held to the employment of skillful agents and prudent operatives, and are bound to use all the necessary precautions employed by such organizations to protect others while exercising their rights. And if it is true that sparks are emitted from a locomotive in proportion to the amount of steam applied, it would be negligence, while engines are passing near buildings, to apply to them an unnecessary amount of steam, and thereby endanger the property.

7.  An instruction to the effect that the company was bound to so control their engines, both as to mechanical appliances and as to the rate of speed, so as not to unnecessarily endanger the property of others. So far as reference is made to the speed of the train, unless it was shown that such speed contributed to the injury, it would be improper; but in cases where the injury resulted from collision with the train, such a reference to its speed would be proper.

8.  MUTUAL NEGLIGENCE—In such cases it is for the jury to determine from the evidence whether the injury resulted from an unnecessary exposure of the

building by the owner, or by an undue amount of sparks emitted from the locomotive; and an instruction which entirely ignores the question of negligence on the part of the owner, and from which the jury may have supposed that they were at liberty to find for the plaintiff, notwithstanding his negligence materially contributed to the injury, is erroneous.

9.  When the owner of a building exposes it to such a degree of danger that it will most probably be destroyed, he cannot recover, unless the party causing the injury is shown to have been guilty of greater negligence; and such owner, when he permits the windows to remain open and unglazed, and other openings in the building to remain unrepaired, so that fire emitted from a passing engine is liable to be blown into it, he is guilty of negligence; and, if injury happen, he cannot recover, unless greater negligence is shown on the part of the company.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. CHARLES EMERSON, Judge, presiding.

These were actions on the case brought by the appellees, against the appellant, in the court below, for negligently and carelessly burning their warehouse, which was situated near the track of the appellant, and goods stored therein.  The causes were tried by juries, who returned verdicts for the plaintiffs. Motions for new trials were made and overruled, and judgments entered upon the verdicts, whereupon the defendant brought the cases by writ of error to this court.  The further facts in the cases fully appear in the opinion of the court.

Messrs. NELSON and ROBY, for the plaintiff in error.

Mr. A. J. GALLAGHER, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

These two cases involve substantially the same questions, and will be considered as one.  In one of them, Hamilton and James W. Haworth sued the Great Western Railroad company, in trespass on the case, for negligently and carelessly burning their warehouse, by the escape of fire from their locomotives.  In the other case, the two Haworths and Allen

Litzenberger brought a similar suit against the company for burning, in the same manner and at the same time, a large amount of personal property stored and situated in the warehouse. As negligence, it was averred in the declaration, that appellants did not have the engine, from which the fire was supposed to have communicated, equipped with the most approved appliances to prevent the escape of fire.

Before we come to discuss the main questions in the cases, we will first dispose of a preliminary one, relating to the admissibility of evidence. Plaintiff in error introduced Congdon as a witness, who testified that he was a master mechanic in the employment of the company, and in their machine-shop; and that the spark-arrester used on the locomotive from which it was alleged the fire escaped was the best known, and in use; and he knew it was in good repair at the time the fire occurred. On being cross-examined, he said it was his business to know the condition of every engine at the time it left the shop on each trip; that he knew the condition of the engine from the uniform course of the business of the shop; but was unable to state when he had made a personal examination of that engine. Plaintiffs in error, on re-examining him, asked : " What was the uniform course of business in the shop ? " On objection by defendants in error, the court refused to permit him to answer the question.

Having stated that the spark-arrester on this particular engine was in good condition, and that he knew it to be so from the uniform course of the business of the shop, we are unable to perceive how it became material that he should explain in detail the course of business in the shop. He must have acquired his information of what he did say from others, or only inferred from the course of their business that it was in proper condition, without knowing the fact. While plaintiffs below might have inquired on cross-examination as to the usual course of business, defendant below did not have the right to do so on the re-examination; and we do not see that it was important that this witness should have made the explanation sought.

It is urged that the court below erred in giving the instructions asked by defendants in error, and in modifying a portion of those asked by plaintiff in error, and in refusing others. The first of these given for defendants in error, inform the jury that if they believe the company ran an engine past the warehouse in question at a great rate of speed, and used a larger amount of steam than was required, and, as a consequence of using so much steam, an undue amount of fire was emitted, that would be evidence of negligence on the part of the company. Some of the witnesses testified that the larger the amount of steam applied the greater the amount of fire that would escape. In view of this evidence we see no objection to the instruction. It left the jury to determine whether there was more than the requisite amount of steam employed, and if so whether that caused an undue amount of sparks to escape. If such would be the effect of the application of a large amount of steam, and more was employed than was necessary, that would be negligence if it caused the destruction of the property. It might have been more accurate to have so stated the law to the jury, but as practical men they could not have but so understood the instruction.

Notwithstanding the legislature knew when they granted these companies their franchises, that they were authorizing them to employ a dangerous element, still we cannot infer that they did intend that they should use it in a careless or negligent manner. They designed that they should use their franchises with all reasonable and practicable care. They did not design these great arteries of commerce and intercommunication to be an infliction upon the communities through which they pass. But they designed, and the law requires them to exercise their privileges in such a manner, as to prevent, as far as is practicable, injury to others. To do so they must be held to the employment of skillful agents and prudent operatives. And they are bound to use all of the necessary precautions employed by such organizations, to protect others while exercising their rights. All men are required to so exercise their own rights as not to injure others in the enjoyment of theirs, and to this

fundamental rule corporate bodies are required to conform. If it is true that sparks are emitted from their locomotives in proportion to the amount of steam applied, it would be negligence in passing through a populous city, or near to buildings, to apply an unnecessary amount, and thus communicate fire to buildings or property.

By the third instruction given for defendants in error, the jury were informed that the company were bound to so control their steam-engines, both as to the mechanical appliances thereto attached and as to the rate of speed, as not to expose the property of third persons to unnecessary danger, and if they believed the engine in question, on the occasion of the burning of the warehouse, did emit an undue and extraordinary amount of fire, that was evidence of negligence on the part of the company. If the injury was occasioned by an unnecessary degree of speed, which we do not see could be the case, then it was properly referred to in the instruction. Such a reference to the speed of a train would be eminently proper where the injury was to persons or property coming in collision with the train, but unless such speed could in some manner be shown to have contributed to the fire, we do not see what proper purpose it could have served. Nor do we see that an extraordinary amount of sparks emitted from an engine was unlawful unless it was unnecessary, and contributed to the injury. The jury should have ascertained, from the evidence, whether by an unnecessary exposure the owners of the property had suffered the loss. And they should, from the evidence, have determined whether an undue amount of sparks had been emitted, and had produced the destruction of the property. If it was destroyed from some other cause, then the speed of the train or quantity of sparks emitted could not render the company liable. Plaintiff's fourth instruction is too broad. It entirely ignores the question of negligence on their part. The jury under this instruction may have supposed that they were at liberty to find for plaintiffs, notwithstanding they had themselves been guilty of negligence which materially contributed to the injury. And, as such is not the law, this instruction may have

misled the jury, and it should, therefore, have been modified or refused.

. The sixth instruction is substantially the same as the third. And what we have said in reference to that will apply to this. It perhaps contains abstract legal propositions, but while it is subject to criticism, we are of opinion it could not have misled the jury.

The fifth instruction asserts that the fact that the property of defendants in error was in an exposed condition to the road did not lessen their rights to recover for injury to their property produced by negligence, nor relieve the road from the exercise of due care and precaution to prevent the fire. Both parties, in the exercise of their rights, were bound to the use of reasonable care and diligence to avoid injury. If, then, defendants in error were guilty of negligence, in permitting the windows of the warehouse near or adjoining the track of the road to remain open and unglazed, together with other openings in the building to remain unrepaired, so that the fire emitted from the engines of the company would most probably be blown into the building, this would be negligence on the part of the owners. And especially so when they permitted cobs, husks of corn, with grease and rags, and other highly combustible materials to remain in a room of the building thus exposed. A party thus exposing his property to such hazards would unquestionably lessen his right of recovery. In such a case the owners could have no right to recover unless the negligence on the part of the company was more gross than theirs. This instruction was calculated to mislead the jury, and should have been modified before it was given.

Defendant below asked this instruction, which was the seventh in the series:

"The court further instructs that, if the jury find from the evidence that the plaintiffs have been guilty of negligence in leaving their property in an exposed condition, in a warehouse, close to the railroad, with combustible matter in it likely to take fire from sparks emitted from the engine of defendant, and in carelessly leaving the house in such condition as that sparks

might enter and come in contact with such combustible matter, then the plaintiffs would have no right to recover, and the jury should find for defendant."

The court refused to give it as asked, but modified, and then gave it, which is this:

"The court further instructs the jury for defendants that if they believe from the evidence that plaintiffs have been guilty of negligence in leaving their property in an exposed condition, in a warehouse close to the railroad, with combustible matter in it likely to take fire from sparks emitted from the engine of defendants, and in carelessly leaving the house in such condition as that the sparks might enter and come in contact with the combustible matter, then they should find for the defendant unless the proof further shows that defendant was guilty of gross negligence in not having used due precaution in the appliance of its engine of the best known means for preventing the escape of fire, or in the manner of running its engines."

We have seen that, when a party has exposed *his* property to such a degree of danger that it will most probably be destroyed, he has no right to recover, unless the party causing the injury is shown to have been guilty of grosser negligence. This instruction, as modified, only asserts that principle, and leaves it to the jury to find whether the property was so exposed, and if so, whether the company were guilty of grosser negligence. There was no error in modifying this instruction.

It is, however, insisted that there is no evidence of gross negligence upon which to base this instruction. Negligence is not a legal question, but is one of fact, and must be proved like any other. Juries are intended to be selected from intelligent, practical men, who, after hearing the evidence, will be able to determine whether, considering all of the circumstances, the issues have been proved. And, as negligence is the opposite of care and prudence—is the omission to use the means reasonably necessary to avoid injury to others, it is proper that such questions should be left to practical minds to determine whether

a duty has been omitted, and, if so, whether, under the circumstances, it constitutes slight or gross negligence.

The judgment of the Circuit Court must be reversed and the cause remanded.

*Judgment reversed.*