# ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

## ABRAM MIDDLESWORTH.

1. NEGLIGENCE—*liability of a railroad company for killing stock.* In an action against a railroad company for killing stock, it appeared that the animals were on the track near a culvert, and were seen by the engine driver; that he sounded the whistle to frighten them off, but that they ran along the track into a cut, and instead of stopping the train, as he might have done, it was driven among them, and two of the animals were killed before reaching the cut, and the remaining ones killed in the cut and along the track to the first crossing beyond it: *Held,* that this was culpable negligence on the part of the engine driver, for which the company was liable.

2. SAME—*when plaintiff not considered equally in fault.* And in such case, where the proof showed that the plaintiff had made use of one side of the company's fence along the roadway, for an inclosure, in which the stock was penned, and through which they had broken and got upon the track, such act of carelessness

on the part of the plaintiff, will not lessen the defendant's liability, where the exercise of ordinary care and skill upon its part would have prevented the injury sustained.

3. FORMER DECISIONS—*overruled.* The contrary doctrine, announced in the cases of the *Central Military Tract R. R. Co.* v. *Rockafellow,* 17 Ill. 541; *Great Western R. R. Co.* v. *Thompson,* ib. 131; *Ill. Central R. R. Co.* v. *Reedy,* and *Chi. & Miss. R. R. Co.* v. *Patchin,* 16 ib. 198, overruled.

4. RAILROAD COMPANIES—*duties of—to prevent injury to the property of another.* It is the duty of corporations, as well as of all persons, in all the business and avocations of life, each to so exercise his rights as to cause no unnecessary injury to another, each one using ordinary care and diligence to prevent injury to the other.

APPEAL from the Circuit Court of Shelby county; the Hon. A. J. GALLAGHER, Judge, presiding.

The opinion states the case.

Mr. CHARLES EMERSON, for the appellants.

Messrs. MOULTON & CHAFFEE, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case for negligence in so running the railroad train of appellants, that twenty-one mules of appellee were killed. There were a verdict and judgment for the plaintiff, a new trial having been refused. The points made here are, that the verdict was against the evidence and should have been set aside, and a new trial granted, and that certain instructions given for the plaintiff were improper, and one asked by the defendants and refused, should have been given.

We have examined the evidence with great care, as it appears in the bill of exceptions, and are satisfied it supports the charge of great negligence, even to recklessness on the part of the employees of the appellants. The weight of the

evidence is strong to the point, that it was in the power of
the driver of the engine, by the exercise of ordinary care, to
have seen such a number of mules in time to have stopped
the train before they were reached.   With a good head light
properly trimmed, and luminous, on a straight road, it is impos-
sible, if he was not asleep, which these drivers sometimes are,
when on duty, and on the usual look-out, that he should not
have seen them.   Even if he had other duties to perform,—
such as attending to the pumps or other parts of the machine,
he has always time to make such observations, and provide
against accidents.   It is not unfrequent, and it has been
charged against these drivers, that they, intentionally, rush their
machines into a crowd of animals, with no other thought but
to see how many they can kill, like a sportsman shooting into
a flock of quails, and boast of their skill afterwards ; and that
they are sometimes asleep at their posts, is an asserted fact.
A spirit of recklessness seems to have been engendered among
them, resulting not only in loss to the companies employing
them, but in life and property, to a fearful extent.   We are
not to suggest a corrective, but it would seem, by the united
action of these most powerful and necessary corporations,
some system might be devised by which none but the most
careful men should receive employment from them in such
responsible positions, a prompt discharge immediately follow-
ing exhibition of negligence.   It may be said, these corpora-
tions must take men as they find them, and none are perfect;
yet, there is a vast difference in the qualities of men
engaged in the same pursuit, and all proper means should be
used to provide the best.   There is always a choice, and it
ought to be incumbent on railroad companies to make the
best choice, without regard to compensation, of men, to whom
the public are obliged to entrust their property and lives and
all that is dear to them.

It is in vain to say, in the face of the testimony in this
record, that a careful driver, on the look-out, could not see a

gang of mules on a level, when there was no curve in the road, and stop the train in time, although it was running at the rate of thirty miles an hour. With the patent brake now in general use, a passenger train, as this was, running at the rate of thirty or forty miles an hour, can be " broke up " and brought to a stop in one hundred and fifty or one hundred and seventy-five yards, and such a crowd of animals can be seen much farther than that.

This, the driver of appellants' engine could have done, but he chose rather, to run recklessly into the herd, regardless of consequences. The proof shows, as we understand it, that the mules were on the track near the culvert; that the engine driver saw them before he reached the culvert, and whistled to frighten them from the track; that they ran north on the road into the cut, two of them having been overtaken and killed before the train reached the cut, and that the others were killed in the cut and along the track to the road crossing north of the cut. The train could have been stopped before the cut was reached, if not before the two mules were killed. This is evident. There was culpable negligence in omitting so to do.

But it is said appellee was also negligent, and his negligence contributed to the injury. This cannot be denied; he was incautious in penning the mules at the place he did, but that gave appellants no right, with their powerful machine, to run over them and destroy them, if proper care on their part would have prevented it. It is carelessness for a man to lie down and go to sleep in a public road, but if he does so, a driver of a team, seeing him in that position, has no right to run over him, and kill or maim him.

It is complained that the court gave this instruction for the plaintiff:

1st. That if the jury believe, from the evidence, that the servants or employees of the railroad company, in the management of the engine, were guilty of gross negligence or

63—46TH ILL.

carelessness, and, in consequence, the mules were killed, that then the jury should find for the plaintiff the value of the mules so killed or injured, unless they find, from the evidence, that the plaintiff was also guilty of negligence.

Strictly, this instruction was not quite right, as it mixes up the mules injured with those killed, and would seem to authorize the jury to find for the value of those injured, and would tend to mislead them; but that they were not misled, appears by the amount of the verdict, for, by computation, it will be seen only the mules killed were included and estimated. The defendants could not, therefore, have been prejudiced by it.

It is also complained that the court gave this instruction for the plaintiff:

"If the jury believe, from the evidence, that the engine driver, by the use of ordinary skill and prudence, could have seen the mules, or that he did see the mules, and that he might, without danger, have stopped the train before striking the mules, and did not, that this would be negligence on the the part of the railroad company."

Appellants admit this is the doctrine when applied to railroad companies as common carriers, but when such a company has its road fenced with a good and sufficient fence, the servants of the company have a right to assume that no unruly stock has broken down the fence and got upon the road; and the owners of such stock have no right to demand that the servants of the company shall keep a good look out for the purpose of avoiding injury to it, and for this rule cites *The Central Military Tract R. R. Co.* v. *Rockafellow,* 17 Ill. 541, and *The Great Western Railroad Co.* v. *Thompson,* ib. 131, and *Ill. Cent. R. R. Co.* v. *Reedy,* ib. 580, which seem to sustain him—in fact, do sustain this view—and so does the case of *The Chicago & Miss. R. R. Co.* v. *Patchin,* 16 ib. 198.

The doctrine is distinctly laid down in those cases, that a railroad company is not liable for the want of ordinary care and diligence in running its train, whereby stock upon the

road is killed, but only for wanton, willful or gross negligence, and that the doctrine in regard to carriers of persons, has no application.

Much reflection has satisfied us the doctrine of these cases is liable to severe and just criticism, and is not in harmony with that great maxim of the common law, so long reverenced, and so consonant with the instincts of our nature, and that is, " So use your own property and exercise your rights, as not to inflict injury upon another." The idea is not tolerable, that an injury may be inflicted which, by ordinary care and diligence, could have been avoided. There would be no safety in daily intercourse, if such was the law. By its force, a man may ride his horse over another, who is carelessly exposed in a street, on which they have a common right. By its force, all those precautions and safeguards sanctioned by experience, are dispensed with, and a time-honored and sensible and just maxim of the law scouted. The true doctrine is, that in all the business and avocations of life, those pursuing a particular business should so exercise their rights as to do no unnecessary injury to another in the pursuit of his business, or in the exercise of his rights. All should use ordinary care and diligence to prevent injury. *Gr. Western R. R. Co. of* 1859 v. *Haworth et al.* 39 Ill. 346.

In this view the instruction was correct.

It is also complained that the court refused to give, for defendants, this instruction:

" If the jury believe, from the evidence, that the plaintiff, without the permission of the railroad company, entered upon its right of way and made use of its fence to pen a large herd of mules, and the mules broke down the railroad company's fence and got upon the track, and were there injured or killed, the railroad company is not liable."

The facts being as stated in this instruction, the duty of defendants to use proper care and diligence, was in no way diminished. No matter how the animals got upon the track,

if injury to them could have been avoided by the exercise of ordinary care and diligence, that degree of care and diligence should have been observed.

If the owner of the mules was a trespasser in making use of the right of way of the company, and of a portion of their fence for one side of an inclosure for the mules, it was a trespass of long standing, and at no time objected to by the company ; and if, in consequence of the trespass, the mules got upon the track, the servants of the company had no right to kill them.

If a horse breaks a farmer's fence and gets into his field, or the fence is let down for the purpose by the owner of the horse, has the owner of the field, in endeavoring to get the horse out, a right to kill him ? No; the owner of the field must act, under such circumstances, with a due degree of care and caution, so that in his efforts to get the horse out, he does him no unnecessary damage. This revered maxim, to put it in its original language, " *Sic utere tuo ut alienum non lœdas,*" is applicable to all the relations of life and conditions of men in society, and to railroad corporations likewise.

These considerations satisfy us there was no error in the instructions in giving or refusing, as alleged. The judgment must be affirmed.

*Judgment affirmed.*