# The Illinois Central Railroad Company

*v.*

## John T. Noble.

*Filed at Springfield November 2, 1892.*

1. Railroad company—*duty in respect to trespassing animals.* Where a railway company has properly fenced its track, and done all that the law has required of it, it will not be liable for injury to stock wrongfully on the track, merely for the want of care and caution to discern such animals. A railway company owes no duty to the owner of trespassing animals to keep a lookout for them upon its tracks, to discover their presence there.

2. Same—*basis of liability for killing trespassing animals.* Where animals trespass upon the track of a railway company which is properly inclosed, and the animals exposed to injury, the duty of the company to exercise care as to them arises only after discovery of their presence on the railway. If, after discovering animals upon the track, the servants of the company might, by the exercise of proper care and prudence, prevent an injury, and fail to do so, the company may be liable.

3. Former decisions. The case of *Illinois Central Railroad Co. v. Middlesworth*, 46 Ill. 494, in so far as the rule there announced imposes upon railroads the duty to anticipate the presence of trespassers upon the tracks, and be on the constant watch to discover them, so as to make a breach of that duty a ground for a recovery by the trespasser, is not followed, but is disapproved.

4. Instruction—*the word "reasonable" construed.* The word "reasonable," in an instruction, as indicating the degree of care and caution which the law requires the servants of a railway company shall use for the purpose of discovering animals upon its track and avoiding injury thereto, is to be understood as meaning "ordinary care." If not capable of such construction its use will be error.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. O. T. Reeves, Judge, presiding.

Messrs. Williams & Capen, for the appellant:

When a domestic animal within the private inclosure of a railroad company is a trespasser, and gets upon the track

where the engineer has no reason to anticipate it will be, the railroad company is only liable when, after actually discovering it, the engineer ought, by the exercise of care, to stop or slacken the train to have avoided striking it. *Railway Co.* v. *Barlow,* 71 Ill. 640; *Railroad Co.* v. *Godfrey,* id. 500; *Railroad Co.* v. *Hill,* 24 Ill. App. 619; *Railroad Co.* v. *Phelps,* 29 Ill. 447; *Railroad Co.* v. *Goodwin,* 30 id. 117; *Locke* v. *Railroad Co.* 15 Minn. 350; *Zimmerman* v. *Railroad Co.* 71 Mo. 476; *Jackson* v. *Railroad Co.* 25 Vt. 150; Redfield on Railways, sec. 123. See cases cited in note on p. 111, 19 Am. and Eng. Ry. Cas.

Where the owner of the animal has been guilty of contributory negligence, the railroad company is only liable for willful, intentional or gross negligence. *Railroad Co.* v. *Todd,* 36 Ill. 409; *Railroad Co.* v. *Johnson,* 103 id. 512; *McCandless* v. *Railway Co.* 45 Wis. 365; *Fowler* v. *F. L. & T. Co.* 21 id. 73.

Where a railroad gate at a private crossing is properly constructed and maintained, the primary duty to keep it closed is upon the land owner. The railroad company, in such case, is only liable when the gate has been left open long enough for the company to have knowledge of that fact, either actual or implied. *Railroad Co.* v. *McKee,* 43 Ill. 119; *Railroad Co.* v. *Arnold,* 47 id. 173; *Railroad Co.* v. *Sierer,* 13 Ill. App. 261; *Railroad Co.* v. *Adkins,* 23 Ind. 340.

Where a sufficient gate is left open, under such circumstances that no fault is attributable to the railroad company, the burden of proof is upon the land owner to show that he is free from contributory negligence. He must show himself affirmatively free from negligence, or negligence will be presumed against him. *Brick Co.* v. *Railroad Co.* 58 Hun, 396; *Eames* v. *Railroad Co.* 14 Allen, 151; *Waldron* v. *Railroad Co.* 35 Me. 422; *Fisher* v. *F. L. & T. Co.* 21 Wis. 73; *Railway Co.* v. *Wood,* 47 Ohio St. 431; *Locke* v. *Railroad Co.* 15 Minn. 350.

Where a plaintiff is guilty of contributory negligence, judgment can not be rendered against a defendant except where the latter has been guilty of wanton, willful or gross negligence. *Railroad Co.* v. *Johnson,* 103 Ill. 512; *Railroad Co.* v. *Cauffman,* 28 id. 513; *Railway Co.* v. *McGinnis,* 71 id. 346; *Railroad Co.* v. *Hetherington,* 83 id. 510; *Railway Co.* v. *Goss,* 17 Wis. 428; *Tower* v. *Railroad Co.* 2 R. I. 404.

A plaintiff must show affirmatively that he has been free from negligence materially contributing to the injury, before he can recover except for willfulness, wantonness or gross negligence. *Railroad Co.* v. *Gregory,* 58 Ill. 272; *Abend* v. *Railroad Co.* 111 id. 202; Thompson on Negligence, 1176.

After a railroad company has fully complied with the statutory requirements in building and maintaining a good and sufficient fence, it is not then bound to anticipate that others will fail in performing their legal obligations, and let domestic animals upon the track. *Railroad Co.* v. *Engle,* 84 Ill. 397.

Gross negligence is the utmost degree of negligence. *Railroad Co.* v. *Johnson,* 103 Ill. 512.

Circumstantial proof is not of a conclusive nature in respect to the hypothesis proposed, unless it also exclude every other inconsistent hypothesis. Cowan & Hill's note to Phillips on Evidence, (4th ed.,) 616; *Railway Co.* v. *Clayberg,* 107 Ill. 644.

Messrs. Stevenson & Ewing, and Mr. John F. Wright, for the appellee:

The only issue that arises on this record is whether the agents in charge of appellant's train were, at the time of killing appellee's horses, in the exercise of that degree of care and diligence required by law.

No matter how animals get upon a railroad track, if injury to them can be avoided by the exercise of ordinary care and diligence, that degree of care and diligence must be observed. Even though stock is unlawfully on a railroad track, to be-

come liable for injuring it the railroad company need not be guilty of willful negligence. *Railroad Co.* v. *Middlesworth*, 46 Ill. 494; *Railroad Co.* v. *Rafferty*, 73 id. 58; *Railroad Co.* v. *Lewis*, 58 id. 49; *Railroad Co.* v. *Irish*, 72 id. 404; *Railroad Co.* v. *Spencer*, 76 id. 192.

It is the duty of trainmen to use ordinary care in·looking ahead and discovering whether or not any obstructions are on the track. It is not sufficient to use due care after animals are discovered, if by the use thereof they might have been seen in time to avoid an accident. *Railroad Co.* v. *Bray*, 57 Ill. 514.

The case at bar is almost exactly like the case of *Railroad Co.* v. *Legg*, 32 Ill. App. 218, and the reasoning and the rules of law announced there we think must control here.

Mr. Chief Justice Bailey delivered the opinion of the Court:

This was an action on the case, brought by John T. Noble against the Illinois Central Railroad Company, to recover the value of certain horses of the plaintiff killed on defendant's railroad by one of its engines. The first count of the declaration, upon which alone the case seems to have been tried, alleges, in substance, that on or before August 1, 1890, the defendant was a railroad corporation, and was possessed of and using and operating a certain railroad extending through the county of McLean, and that six horses of the plaintiff then and there strayed and went upon the defendant's said railroad, and said horses being then and there on said railroad, a certain engine of the defendant was then and there so carelessly, negligently and improperly run, conducted and directed by divers agents of the defendant, that said engine run upon and struck the said horses with great force and violence, and thereby then and there killed said horses of the plaintiff, each of the value of $200. The defendant pleaded not guilty, and the trial, which was had before the court and a jury, resulted in a verdict finding the defendant guilty, and

assessing the plaintiff's damages at $550, and for that sum and costs the plaintiff had judgment. On appeal to the Appellate Court said judgment was affirmed, and the record is now brought to this court by appeal from said judgment of affirmance, the judges of that court having granted the necessary certificate of importance.

It appears that the plaintiff, at the time the horses were killed, was the owner of a tract of land in McLean county through which the defendant's railroad runs, and the plaintiff has a private farm crossing over said railroad, with gates on either side. No claim is made of any negligence on the part of the defendant in the matter of properly fencing its right of way, or of constructing and maintaining the gates at said farm crossing. On the night of August 1, 1890, five of the plaintiff's horses got on to the defendant's right of way, and were struck by one of the defendant's locomotive engines propelling one of its freight trains and were all killed. The evidence renders it probable that said horses got on to the right of way by passing through one of said gates, but there is no evidence tending to show by whose fault the gate was opened, nor what care, if any, had been taken by the plaintiff to prevent his horses from getting upon the railroad. It seems, however, to have been conceded at the trial that the gate was not left open through the fault of the defendant, as the plaintiff's counsel expressly declared in open court that he was not seeking to recover because the gate was left open.

The night seems to have been a moonlight night, and the negligence on the part of the employes in charge of the engine, upon which the plaintiff bases his right to recover, consists of their failure to exercise proper diligence in discovering that the horses were on the track in time to so check the speed of the train as to prevent a collision. The testimony of the employes in charge of the train tends to show that they did not and could not see the horses until so near them that a collision could not be avoided, the testimony of the engineer being

to the effect that the horses stepped on to the track only a few feet in front of the engine, and that he then did everything in his power to avoid colliding with them. Other witnesses, however, testified as to the appearance of the tracks of horses as seen on the railroad track after the collision, from which the inference is sought to be drawn that the horses went upon the track at such a distance in front of the engine, that the engineer, in the exercise of ordinary care, might have discovered them in time to prevent the accident. The court thereupon, at the instance of the plaintiff, gave to the jury the following instruction:

"The court instructs the jury that, in determining the question of the liability of the railroad company in this case, you have a right to take into consideration the character and circumstances of the injury, as shown by the evidence, and in weighing the testimony, you should consider all the evidence together, and give to the testimony of every witness whatever weight in your judgment it deserves; and if, from all the evidence, and from all the circumstances shown by the evidence, you believe, that by the exercise of reasonable care and caution, the horses could have been seen by the employes of defendant in charge of said train after said horses were on the track of defendant's railroad, in time to have stopped said train, or to have reduced its speed so as not to have injured said horses, by the exercise of reasonable diligence, then it was the duty of said employes to have done so, and if they did not, then the defendant is liable for such negligence, and the plaintiff is entitled to recover whatever the jury may believe, from the evidence, said horses were worth."

The following instruction asked on behalf of the defendant, was modified by the insertion of the words in italics, and was given as modified:

"Unless the plaintiff has proved, by a preponderance of the evidence, that after the horses were, *or by the exercise of reasonable care could have been,* seen approaching the track, *or on*

*the track*, the trainmen might, by the exercise of ordinary care, have prevented the train from striking the horses, you should find the defendant not guilty."

A minor criticism of these instructions is, that they use the word "reasonable" as indicating the degree of care and caution which the law made it the duty of the defendant's employes to exercise, for the purpose of discovering the horses on the railroad track or approaching thereto. Unless the word "reasonable" is to be understood as the equivalent of "ordinary," we should be disposed to think the objection well taken. If not used in that sense, the word "reasonable" would have had no fixed meaning, and would have authorized the jury to apply to the conduct of the defendant's employes any rule as to care and caution they might have deemed reasonable. In that case the effect of the instruction would have been, to submit to the jury the determination of a rule of law. But we think "reasonable care" is to be understood, and must have been understood by the jury, as meaning "ordinary care," and that said instructions are to be treated as though the latter phrase had been employed. *Read* v. *Morse*, 34 Wis. 315; *Kellogg* v. *Chi. & N. W. Ry. Co.* 28 id. 223; *Ridenhour* v. *K. C. Cable Co.* 102 Mo. 270; *Biers* v. *Railroad*, 19 Conn. 570; *Neal* v. *Gillett*, 23 id. 437; *Lynch* v. *Nurdin*, 1 Ad. & Ell. N. S. 36.

The question then is, whether, under the facts which the evidence in the case tends to prove, the defendant's servants were bound to exercise ordinary care and caution to see said horses and discover their presence on the defendant's right of way.

The evidence undoubtedly tends to prove that the plaintiff's horses, at the time they were killed, were on the defendant's railroad track wholly without right, and were in fact mere trespassers. Indeed, there seems to be no substantial dispute that such was the case. The defendant is shown to have performed its entire statutory duty in respect to erecting and maintaining fences on the sides of its road, with gates at the

plaintiff's farm crossing, and no negligence on the part of the defendant in those respects is insisted upon. While it is probable that the horses got on to the railroad through one of said gates, it is not claimed that such gate was left open through the defendant's negligence, and the plaintiff's counsel, as we have seen, expressly disclaimed any right to recover on the ground of any negligence in leaving said gate open. The defendant having performed its entire legal duty in the matter of fencing its road, was entitled to the enjoyment of its right of way, free from the incursion of the domestic animals of adjoining proprietors, and such animals, in getting through said fence on to the right of way, were wrongfully there, and were trespassers.

The evidence also tends to show, and on this point there seems in like manner to be no substantial controversy, that the defendant's employes in charge of its train, had no actual knowledge or notice of the presence of the plaintiff's horses on the defendant's right of way, until the engineer saw them as they were on the track, or just stepping on to the track, the instant before they were struck by the engine. Nor is there any evidence tending to show that said employes had any notice or intimation that the horses were likely to be trespassing upon the defendant's right of way. The controversy, so far as the facts are concerned, is, whether said employes, if they had been in the exercise of ordinary care and caution to discover possible trespassers on said right of way, would have discovered said horses in time to avoid injuring them.

What duty then, as to care and caution, so far as it relates to the mere discovery of the fact that domestic animals are trespassing on a railroad track, does the railroad company and its employes owe to the owners of such animals? It is scarcely necessary to observe that this is entirely apart from any inquiry as to the duty as to care and caution which a railroad company and its employes owe to its passengers, or to

the owners of property in course of transportation, nor does it involve the same rules which apply after the presence of the trespassing animals has been discovered or is known. The railroad company has the right to an unobstructed use of its track, and it is justified in presuming, and in acting upon the presumption, until the contrary is brought to its attention, that its right in this respect will not be interfered with.

We are not prepared to hold that the duty of a railroad company to mere trespassers, or to the owners of trespassing animals, requires such company to run its trains with a view to the constant probability of trespassers upon its track. Precaution is a duty only so far as there is reason for apprehension, and no one can complain of want of care in another, where such care is rendered necessary only by his own wrongful act. *Phil. & Read. R. R. Co.* v. *Hammill*, 44 Penn. St. 375; 1 Thomp. on Neg. 448.

In *T., W. & W. Ry. Co.* v. *Barlow*, 71 Ill. 640, which was a suit against a railroad company to recover the value of a cow killed by a passing train, we said: "The rule of liability in such a case as the present, where an animal is unlawfully upon a railroad track, we conceive to be, that the company is not, in general, liable, unless its servants, after they discovered that the animal was in danger, might by the exercise of proper care and prudence, have prevented the injury; that it is not sufficient, in such case, to charge the company, to show that they were running at a high rate of speed, or without proper care in other respects." And there being no evidence that the employes in charge of the engine, after discovering the peril of the animal, might, by the exercise of proper care and prudence, have prevented the injury, a judgment in favor of the plaintiff for the value of the cow was reversed.

In *I. C. R. R. Co.* v. *Godfrey*, 71 Ill. 500, suit was brought to recover damages for an injury to the person of the plaintiff, who at the time he was injured was a trespasser upon the defendant's railroad track, and it was held that only for wanton

or wilful injury could the defendant be held chargeable. We there said: "Notwithstanding the plaintiff was unlawfully upon defendant's right of way, or not in the exercise of a legal right, and that his own lack of ordinary care exposed him to the risk of injury, yet the defendant might not, with impunity, wantonly or wilfully injure him. And if defendant's servants, who were in the management of the engine, after becoming aware of plaintiff's danger, failed to use ordinary care to avoid injuring him, the defendant might be liable. And this, as we conceive, is the only measure of liability to be claimed, under the facts in this case."

The doctrine announced in these decisions, that where the persons or animals exposed to injury are mere trespassers, the duty to exercise care arises only upon discovery of their presence on the railway seems to be strictly in accordance with the general current of authority. Thus, Mr. Redfield, in discussing the liability of railway companies for injuries to domestic animals, says: "Where the owner of the animals is unable to show that, as against the railway, they were properly upon its track, or, in other words, that it is through the fault of the company that they were enabled to come upon the road, the company are not in general liable, unless, after they discovered the animals, they might, by the exercise of proper care and prudence, have prevented the injury." And again: "It has been held not to be sufficient in such cases to charge the company, to show that they were running at an unreasonable speed, or without proper care in other respects. The only question in such case is, we apprehend, whether the company, after discovering the peril of the animals, might have so conducted as to have prevented the injury." 1 Redfield on Railways, (6th ed.), sec. 126.

In a note to *McAllister* v. *B. & N. W. Ry. Co.* 19 Eng. and Am. R. R. Cas., 108, many authorities involving a discussion of the rule now under consideration are collected, in most of which, however, said rule is applied to persons trespassing on

a railway track, the doctrine sustained by said authorities being, that, "a railroad company is not bound to keep a look-out for trespassers walking upon the track. When such parties are injured by a passing train, they have only themselves to blame, and can not recover, unless the servants of the company have been negligent, after becoming aware of the trespasser's perilous position." We see no reason why the duty of care and vigilance should not be the same whether the trespasser is a human being or a domestic animal. At least, the duty to be on the out-look for the latter can be no greater than for the former.

But it is contended that former decisions of this court have established a different rule. The case involving this point to which our attention is principally directed is that of *I. C. R. R. Co.* v. *Middlesworth,* 46 Ill. 494, and it must be admitted that portions of the opinion in that case lend countenance to such contention. It is apparent, however, that the question now under consideration was not of controlling importance in that case, as the proof showed that the engineer in charge of the engine, as a matter of fact, saw the mules which were killed a sufficient time before reaching them, to have been able, by the exercise of ordinary care, to stop his train and thus avoid colliding with them. So far as the rule there announced imposed upon railroads the duty to anticipate the presence of trespassers and to be in the constant exercise of vigilance to discover them, so as to make the breach of that duty a ground for recovery by the trespasser, said decision is not in harmony with the general current of authority, nor with what has been said by this court in its more recent decisions.

Doubtless, where the view is unobstructed, so that if the engineer is at his post and in the proper discharge of his duties, the trespassing animals must be within the range of his vision, the presumption will readily and perhaps necessarily arise, that he does see them, and his subsequent conduct, as to being negligent or otherwise, will be judged of

upon that basis. But it can not be said that he is bound to anticipate the presence of trespassing animals on the track, or to be under any duty of special vigilance in relation to them until he is in some way notified that they are in fact or are likely to be on the track.

We are referred to several later decisions of this court in which the Middlesworth case is referred to with approval, but in none of them does the precise question here involved seem to have been presented. We are of the opinion that the instruction in this case, so far as it imposed upon the servants of the defendant in charge of its train, the duty of care and caution to discover the presence of trespassing animals of which they knew nothing upon the track, was erroneous, and for that error the judgment will be reversed, and the cause will be remanded to the Circuit Court for a new trial.

*Judgment reversed.*