## The St. Louis, Alton & Terre Haute Railroad Company v. Louis Stapp.

1. RAILROADS—*Animals Trespassing on Track.*—When animals are trespassing on the track of a railroad company, the duty of the company's servants to exercise care as to them, arises only after discovering them on the track.

2. VERDICT—*Disregard of Evidence.*—Where an examination of the record satisfies the Appellate Court that the jury disregarded or rejected material evidence, favorable to the defended party, the verdict will be set aside.

**Memorandum.**—Action for killing domestic animals. Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

The opinion states the case.

APPELLANT'S BRIEF, TURNER & HOLDER, ATTORNEYS.

Railroad signals at crossings are intended to serve a useful purpose, and to be a warning to persons capable of understanding their object. They were not intended for dumb

animals. Terre Haute & Ind. R. R. Co. v. Jenuine, 16 Brad. 210.

Before any liability can arise from an omission to give these cautionary signals, it must appear in some way from the evidence that the injury was the consequence of such omission. Q., A. & St. L. R. R. Co. v. Wellhoener, 72 Ill. 60; Chicago & Rock Island Railroad Co. v. McKean, 40 Ill. 218.

Where animals trespass upon the track of a railway company, the duty of the company to exercise care as to them, arises only after discovering their presence on the track. Ill. Central Railroad Co. v. Noble, 142 Ill. 578.

WM. WINKELMAN, attorney for appellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

This suit was brought in justice's court, appealed to the Circuit Court, and there appellee recovered a judgment against appellant for $100 damages and costs of suit. The right to recover is based upon the alleged negligence of appellant's servants in running its freight train within the city limits of Belleville at a greater rate of speed than six miles an hour, in violation of the city ordinance; in failing to ring a bell or sound the whistle while so operating said train, and in negligently failing to stop the train in time to avoid striking appellee's horse, by means of which negligence appellee claims his horse was struck and killed by the engine pulling said train.

The horse escaped from the stable of appellee in Belleville, got upon appellant's railroad track, ran on and along the same to a place in a trestle bridge, over which said track was constructed, and was there struck by the engine pulling appellant's freight train and pushed off the side of the bridge into the water. The track over which the horse ran, and the bridge, were within the city limits, and the horse got on said track at a place where appellant was not required to fence it. When found shortly after the accident, appellee says the fore legs were broken, and the other witness testi-

fying as, to the injuries says the hind legs were broken; both testified there was a large wound in the side of the horse. When struck and killed, the animal was a trespasser, and in striking it with the engine it does not appear appellant's servants did so willfully, or that they were guilty of gross negligence; on the contrary, unless we reject the testimony of those servants, the only witnesses who saw and described how the accident occurred and the acts of those then operating the train, it does appear that so soon as the animal was discovered by them to be lying on the bridge, they used all diligence and every means at their command to stop the train and prevent the collision. The jury also say in a special finding the train did stop as soon as possible after the horse was discovered by the company's servants. When animals trespass upon the track of a railway company, the duty of the company to exercise care as to them, arises only after discovering them on the track. Ill. Cent. R. R. Co. v. Noble, 142 Ill. 578, and cases there cited.

The testimony of these witnesses also shows they could not have discovered the horse on the bridge until the train had reached the point at which they first saw it. As to the speed of the train and failure to give the statutory signals, appellee testified it was running twenty-five or thirty miles an hour, and he heard no bell or whistle. One other witness on his behalf was examined to establish the same facts. He testified he was in a stable attending a sick mule; that he heard a train pass; heard no bell or whistle; train was going twenty-five or thirty miles an hour. He then said in answer to the question, "Do you mean about twenty-five or thirty miles an hour?" asked by plaintiff's counsel, "No, I mean in quarter of an hour." He was then asked, "In one hour?" and answered "In a quarter of an hour;" and was then asked, "The train was running very fast you say?" and answered "Yes sir; pretty fast." He also said, the time was between three and four o'clock in the morning. On cross-examination he testified another train had passed half an hour before that; that he did not see the train that struck the horse; that the train he saw was the paper train, and

not the train plaintiff spoke about. As against this evidence on behalf of plaintiff, is the uncontradicted fact that the place at which plaintiff testified the train was running at such a high rate of speed was but a short distance from a coal shute at which the train was about to stop, and did stop to take on coal. These facts render it quite improbable that the train was being run twenty-five or thirty miles an hour at the place indicated by plaintiff and are corroborative of the testimony on behalf of defendant, that the speed was between four and six miles an hour and not greater.

The employes of appellant, who testified as to signals, all say the whistle was blown for crossings, and the bell was rung continuously while the train was running through the city. Without lengthening this opinion with a further detail of the evidence it is sufficient to say that a careful examination of the record satisfies us that the jury disregarded or rejected material evidence favorable to appellant, and reluctant as we are to set aside verdicts, a sense of duty impels us to do so in this case, and reverse the judgment. Judgment reversed and cause remanded.