EDWARD GRANBY v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Railroad companies—Killing live stock—Gross negligence.*

Plaintiff sued to recover the value of a colt, which had escaped from an adjoining field onto defendant's right of way, and was run over by one of its trains. The testimony tended to show that the plaintiff had exercised reasonable care respecting the gate, which had in some unexplained manner been opened. It was conceded that defendant was not in any sense responsible for the presence of the colt upon the right of way, and that it was not seen thereon prior to the approach of the train, and not from that time afterwards, before it was killed, by any one except the engineer and fireman, and they both testified that they did not see it until they were within 25 feet of it, and too late to stop the train. The testimony on the part of the plaintiff tended to show that a man or a horse upon the right of way or track, at any point between the gate and the place where the colt was struck, could be readily seen for a distance of over half a mile therefrom, and that the footprints made by the colt showed that it ran upon the track for a

distance of 44 rods before being overtaken by the train, which was running at the rate of 45 miles an hour. And it is held that the question whether or not the defendant's servants were negligent in running down the colt after they became aware of its presence was properly left to the jury.

Error to Macomb. (Eldredge, J.) Argued February 1, 1895. Decided March 19, 1895.

Case. Defendant brings error. Affirmed. The facts are stated in the opinions.

*George E. Tegart* (*Henry Russel*, of counsel), for appellant.

*James C. Lewis* (*Crocker & Knight*, of counsel), for plaintiff.

McGRATH, C. J. Plaintiff sues to recover the value of a colt, which was run over by one of defendant's trains. Defendant's right of way runs north and south through plaintiff's farm. Plaintiff's buildings are on the east side of the railroad. A lane from the buildings leads to the defendant's right of way, and at the end of the lane there is a gate, through which plaintiff drove when desirous of reaching the portion of the farm lying west of the railroad. There is another gate in the west fence, a short distance to the north of the first gate mentioned. Plaintiff had been pasturing his horses on the west side of the tracks. On the evening in question, the gate in the fence on the west side of the tracks had in some unexplained manner been opened, and the horse in question, with others, left the field, and congregated upon the railroad right of way, near the gate at the end of the aforesaid lane. At about 6 o'clock in the evening the defendant's train, south bound, came along, and started the horses. They ran south on the east side of the tracks to a point about 22 rods north of the semaphore, when the colt in

question, with another, which was not the property of plaintiff, ran up and onto the roadbed, and continued to run along and upon the roadbed, one running between the rails and the other just outside the rail, for some 44 rods, when both colts were struck and killed. The testimony tended to show that the plaintiff had exercised reasonable care respecting the gates. It is conceded that defendant was not in any sense responsible for the presence of the horses upon the right of way. The colt was not seen upon the right of way prior to the approach of the train, and not from that time afterwards, before it was killed, by any one except the engineer and fireman. The facts as to the congregation of the horses at the gate, their course after the train appeared, and the distance traversed upon the roadbed, were gathered from several witnesses who had examined the ground, which had been softened by recent rains, and found clear and distinct footprints of the animals, indicating that the horses had galloped from the gate to the point where struck. The engineer and fireman both testified that they did not see the horses until they were within 25 feet of them, and too late to stop the train. The point where the horses were struck was about one-half mile north of a station. The semaphore is located north of the point where the first horse was struck. The engineer says that he did not see the horses until within 25 feet of them, because he was watching for the semaphore, and that there was a curve and a cut. Plaintiff's testimony tended to show a very long and gradual curve, a very shallow cut, and that the semaphore, or a man, or a horse upon the right of way or track, at any point between the gate and the place where the horses were struck, could be readily seen for a distance of over half a mile north thereof.

It is simply a matter of arithmetic to show that, while the horses were traveling 44 rods, the train, at the rate of

speed given by the engineer, would make from one-half to three-quarters of a mile. The plaintiff's contention was that the company's servants negligently ran the horses down after they became aware of their presence, and when, by the exercise of care, the destruction of plaintiff's property could have been avoided. The court properly left that question to the jury. The inferences suggested or presumptions raised by the testimony as to the fact of knowledge on the part of the engineer and fireman of the presence of the horses in a place of danger were certainly sufficient to go to the jury, and the testimony of the engineer and fireman was not necessarily conclusive.

The judgment is affirmed.

Long and Montgomery, JJ., concurred with McGrath, C. J.

Grant, J. (*dissenting*). Two colts, one belonging to the plaintiff and the other to a Mr. Stead, were pastured in Mr. Stead's field, adjoining the defendant's road on the west. A gate opened from this field into the defendant's right of way, where there was a farm crossing, leading to Mr. Stead's farm on the east. The eastern gate to the crossing was considerably south of the western gate. Some one left the western gate open, through which the colts entered the right of way. There is no testimony showing who left the gate open. It is, however, conceded that it was not the defendant. The accident happened between 6:30 and 7:00 o'clock p. m., local time, July 13. Both colts were killed as they were running on the track in front of and away from the engine. The train consisted of six coaches, the engine, tender, and baggage car. The train was running about 45 miles an hour, was from 10 to 15 minutes behind time, around a curve, and on a down grade. No one saw the animals upon the right of way, or the accident, except the engineer and fireman of the

train. The sole evidence on the part of the plaintiff, and upon which a recovery was had, was the testimony of witnesses who had examined the ground, and testified that they saw footprints of the colts running southward from the east gate; that the footprints turned onto the railroad track, and were found from that point to the place they were killed, a distance of 44 rods. The engineer and fireman testified positively that they did not see the colts until they were very near them, and that it was impossible to then stop the train and avoid running them down. Verdict and judgment were for the plaintiff.

1. The colts were trespassers, and the defendant owed the owners only the duty due to trespassers. The only theory upon which the plaintiff was entitled to recover, and upon which the case was submitted to the jury, was that the engineer saw the colts, and wantonly, intentionally, and recklessly ran them down, when he might have stopped his train and avoided the injury. The charge of the learned circuit judge was correct in all but one particular, provided there was evidence tending to show that the engineer and fireman saw the colts, and intentionally and deliberately ran them down. The court instructed the jury that, if the engineer actually saw the colts liable to come upon the track, and purposely and willfully allowed the train to run into and destroy them, the defendant was liable. This instruction necessitated the jury to find that the engineer saw the colts the moment that they turned to come upon the track, or that he saw them running between the track and the fence, and that, if he did see them so running, it was his duty to stop the train, upon the assumption that they might turn upon the track. In neither of these events is the railroad company bound to check the speed of or stop its train. If the engineer saw the colt turning towards the track, there was no presumption that the colt would turn down the track any

more than that he would cross over the track; if running alongside, there certainly was no presumption that he would turn upon the track. This part of the charge was erroneous.

2. No duty is devolved upon a railroad company to exercise any care to discover the presence of animals trespassing on its right of way, and no duty arises towards them or even towards trespassing persons until the employés in charge of the train discover them upon the track. *Railroad Co. v. Noble,* 142 Ill. 578; *McAllister v. Railway Co.,* 19 Amer. & Eng. R. R. Cas. 108, and note; *Howard v. Railway Co.,* 67 Miss. 247. It is contrary to reason that an engineer will deliberately run down animals, or any obstruction, upon the track, because he thereby endangers his own safety and life, as well as those of all on board. Trains have been derailed by such obstructions, and the fireman in this case testified that he was once upon an engine which was derailed by this cause. There should, therefore, be clear evidence from which a jury may have the right to find the wanton conduct necessary to sustain liability. The fact that the footprints of the colts were found upon the track for 44 rods before they were struck, and that there was an opportunity to see the colts for a quarter of a mile or more north of the gate, is permitted to allow the jury to find that the engineer and fireman perjured themselves; that they actually did see the colts, and that they could have stopped the train before striking them. How fast the colts were running, how long it took to overtake them after they were upon the track, how far the engine was from them when they went upon the track, are, under the plaintiff's evidence, mere conjecture. The speed of the train is known. If the speed of the colts were known, it would be a simple question of mathematical calculation to determine how long it would have taken the train to overtake them, pro-

vided they had 25 feet, or any other number of feet, the start. The train was running at the rate of a mile in one and one-third minutes, or 80 seconds. To run a quarter of a mile, or 80 rods, would therefore take 20 seconds, and to run 44 rods 11 seconds. Can the verdict, therefore, be based upon anything but the merest conjecture? I have already shown that the engineer was under no legal obligation to check the speed of his train had he seen the colts standing at the gate, or running from it between the fence and the track. Both the engineer and fireman testify that they were watching the semaphore, which was 25 feet high, and that it was their duty to do so, in order to obey the signal that might be given. The light was in the semaphore. They were in a place where they were under no obligation to watch anything but the semaphore, and where they could not be expected to look for trespassing animals. The engineer was on the right of his engine, and on the inside of the curve. He would not, therefore, look straight down the track while watching the semaphore. If the engineer did not observe and heed the signal given by the semaphore, disaster might result; and, whether it did or not, both he and the fireman would be subject to removal, as they testified. Is it unreasonable or improbable or beyond belief that they did not see these two colts until they were upon the track?

We are not, however, without authority upon this point. In *McAllister v. Railway Co., supra,* the plaintiff, a trespasser, was walking upon a railroad track in the night, with the headlight in full view for 2,000 feet, with the train running from 13 to 15 miles an hour. The same reason was urged in that case that is urged in this, viz., that the view was unobstructed, and the engineer should have seen him. The engineer testified that he did not see him, and it was held that the plaintiff could not recover.

In *Darling v. Railroad Co.,* 121 Mass. 118, the train

was moving at a usual and proper rate of speed, and the engineer did not stop or slacken the train in order to avoid or give way to a trespassing animal, and the court held that he was not bound to do so; citing several authorities to sustain the rule.

In *Railway Co. v. Tate*, 70 Miss. 348, the engineer. testified that he first saw the animal standing upon the track, about 50 yards ahead, and that it was impossible to avoid the accident. . It was shown by the plaintiff that the footprints of the animal showed that it had run 40 yards down the track before being struck.    It was held that there was nothing unreasonable or improbable in the engineer's statement, and that the plaintiff could not recover.

In *Price v. Transportation Co.*, 31 N. J. Law, 229, it was held that the plaintiff could not recover for carelessness in not slackening the speed of the train, notwithstanding the animals were trespassers without fault on plaintiff's part.    See, also, *Railroad Co. v. Rehman*, 49 Penn. St. 101, and authorities cited in note to *McAllister v. Railway Co., supra; Railway Co. v. Barlow*, 71 Ill. 640.

The judgment should be reversed, and a new trial ordered.

HOOKER, J., concurred with GRANT, J.