RATTENBURY *v.* PERE MARQUETTE RAILROAD CO.

1. RAILROADS—NEGLIGENCE—ANIMALS—TRESPASSING ON TRACKS.
   Trainmen owe no duty to the owner of animals trespassing on the right of way to look out for or to discover them: reasonable care merely requires that they should save them if it is fairly possible after discovering the animals.[1]

---

[1] As to duty of railroad employés to keep a lookout for live stock on track, see note in 24 L. R. A. (N. S.) 858.

2. SAME.

Evidence of plaintiff tending to show that two horses were at large in the vicinity of defendant's right of way on the night of the killing, that just before defendant's train passed the crossing the whistle was blown in an unusual manner, that at the point where they were killed the track was straight and the headlight rendered objects visible 200 feet ahead, that the train could have been stopped within 100 feet on the grade at that point, was insufficient as against the denial of defendant's engineer that he saw the animals, to raise an issue of fact for the jury, his testimony being unimpeached.

Error to Wayne; Mandell, J. Submitted June 5, 1912. (Docket No. 112.) Decided October 1, 1912.

Case by George Rattenbury and another against the Pere Marquette Railroad Company for the negligent killing of two horses owned by plaintiffs. Judgment for defendant upon a directed verdict. Plaintiffs bring error. Affirmed.

*C. C. Yerkes*, for appellants.

*Bills & Streeter* (*S. L. Merriam*, of counsel), for appellee.

OSTRANDER, J. Testimony for the plaintiffs tended to prove that two horses escaped from an inclosure where they pastured, wandered through the streets of the village of Northville, Mich., passed upon the tracks of defendant, and proceeded north for some distance, when they were overtaken and killed by a north-bound passenger train which left Northville at about 3:25 a. m., September 7, 1908. Undisputed testimony tends to prove that the horses went upon the track within the limits of the yard maintained by defendant at Northville, and plaintiffs abandoned as a ground for recovery the alleged negligence of defendant in not constructing and maintaining certain cattle guards and fences. They claim the right, under the second count of their declaration, and upon the testimony produced, to take the opinion of a jury upon the

question of whether the engineer discovered the presence of the animals on the track and could so have driven the locomotive as to save them. This the trial judge denied, and directed a verdict for the defendant.

In *Granby* v. *Railroad Co.*, 104 Mich. 403 (62 N. W. 579), the plaintiff's contention was that the company's servants negligently ran the horses down after they knew of their presence on the track, and when they might have avoided their destruction. Upon this point it was held in the majority opinion that the testimony of the engineer and fireman that they discovered the presence of the horses too late to stop the train was not necessarily conclusive, and that the case was rightly sent to a jury. There was testimony tending to prove that the horses ran, either between the rails, or just outside of them, for 44 rods before being struck and killed. It appeared further that it was in the daytime, and that the horses on the track could have been seen for a distance of more than half a mile. Both opinions affirm the rule that as to the owner, trainmen are not bound to look for and discover trespassing animals, or to do more than save them after they are discovered, if it is reasonably possible so to do.

In the instant case the engineer testified that he did not see the horses, and did not know that they had been struck by the locomotive, or that anything had been struck by it, until he reached Wixom, when he discovered hair on the left side of the pilot beam and some injury to the step of the pilot, which he reported. He testified, also, that he gave no other than the regular station and crossing signals with his whistle. He saw one horse in the said highway on the right, or east, side of the track, which came running up to the engine and stopped. He did not strike that horse. Manifestly, if this testimony is conclusive, the verdict was rightly directed.

Plaintiffs say it is not conclusive, and, as making an issue of fact upon the question, they point out the following testimony: A woman living on the west side of the line, and south of the highway from which the horses

went upon the right of way, heard the horses, or some horses, in her yard. She then heard defendant's train whistle south of the station, which was south of her house. She saw the horses as they left her premises going to the west, and when they again returned, going towards the railroad. The train was approaching, and she heard it whistle some rods south of the crossing—

"And all I know the train whistled and made lots of noise from the bridge to behind our house, and that is all I can say. * * *

"Q. You say they made lots of noise. What was the nature of it?

"A. Sometimes when they are unloading teams they make noise to notify the people.

"Q. What do they make the noise with?

"A. Blowing the whistle, and they did that until they were behind my woodshed, and there I thought by myself, if the horses get scared by the train, they made lots of noise and that is all I know."

Another woman, a witness, testified that she lived about 100 rods from the tracks, and that upon the particular morning the—

" Train tooted the danger signal. That started at the bridge, at the overhead bridge. The direction of it is south from the house. They were tooting and whistling. I could not tell how long it continued. When it stopped, they were at the end of our coal sheds. It was not a steady noise. * * * When I first heard the whistling, the sound came from the bridge, from the overhead bridge. * * * The bridge is between our house and the depot. The depot is south of the overhead bridge, and the bridge is between our house and the depot, and the bridge is toward the house from the depot."

The station is a half mile south of the highway from which the horses went upon the track. The overhead bridge referred to is 990 feet south of the highway. South of this bridge there is a curve in the track. The highway, at the crossing, is 30 feet wide. North of the highway about 38 paces is a bridge, over a small stream, on which the ties are laid some four or five inches apart. The horses

were found on the left side of the track, one 50 and the other about 100 feet north of the bridge.   Appearances indicated that at least one of them was struck on the bridge. The testimony for plaintiffs tends to prove that the horses seen by the witness were running (galloping) in the highway, going towards the tracks, and that the horses killed were running on the tracks.   The locomotive headlight permitted seeing objects on the tracks 200 feet ahead of the locomotive.   The view on the track to the north was unobstructed, and the train, traveling up a grade as it was, could have been stopped in 100 feet.   It was dark. In the argument for plaintiffs it is said:

"If the engineer had admitted the truth of the testimony of plaintiffs' witnesses that he had given an alarm, from which it could be assumed that something was on the track, and explained by a showing that he was whistling, say, for people on the highway, or that he had seen the two horses, was whistling for them, and was afraid to stop his train for fear of injuring his passengers, then his testimony might have been a basis for the court to direct a verdict.   His testimony, however, was a direct denial, raising a question of fact; and the only question left in the case was whether the plaintiffs' testimony, as it stood, was sufficient to leave to a jury. It would be impossible for a plaintiff to testify directly that an engineer sees obstacles on the track.   He can only testify to those acts of the engineer which indicate that he has seen something, or that the circumstances were such that he should have seen.   In this case it is claimed that he did see the stock, as shown by his act; but that if the jury did not find that he saw, that the testimony showed such a state of facts that they might find that he should have seen this stock in time to have avoided the killing."

This contention, as well as the case made by the declaration, is plainly too broad, because it assumes the existence of a duty to exercise care to discover the presence of the animals on the track.   Plaintiffs' case depends upon the existence of two facts, one the discovery of the horses on the track; the other a needless running them down.   No one saw these horses go upon the track.   Their hoof

prints were not found in the highway. One or more other horses were running about in that vicinity that night. The horses seen by the witness in her yard may, and may not, have been the horses which were killed. From the fact that a succession of signals was given with the whistle, it may be inferred that it was thought necessary to give them; that the warning was given because something, or somebody, was discovered upon the track, or near it. It is a necessary part of the inference that the signals were given, not before, but after, the discovery was made. When from this inference we are asked to find that the engineer discovered the presence of these horses on the track, or in the highway, from which they turned upon the track, we are asked to base inference upon inference; a necessary part of the second inference being that the horses were discovered a long distance south of the highway. The testimony of the engineer that he did not at any time discover the presence of the horses on the track is not directly disputed, and he was not impeached generally. As they were struck by the left-hand side of the locomotive and within a few feet of the highway, his testimony is not inconsistent in itself, especially if he was observing, as he testified that he was, a horse in the highway, running towards the train. It will not be assumed that he willingly took avoidable risks. If it is assumed that he was mistaken about the signals which were given with the whistle, it is still true that he is not contradicted upon a material point. To permit plaintiffs to recover, we must assume, what ought to be proved, that he saw the horses and could have safely avoided injuring them.

In my opinion, the trial court committed no error, and the judgment is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred.