GUNTHER *v.* LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY.

· ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN· DISTRICT OF NEW YORK.

No. 1367. Argued January 16,·1890. — Decided March 3, 1890.

A policy of insurance on a building and its contents against fire, containing a printed condition by which "kerosene or carbon oils of any description are not to be stored, used, kept or allowed on the above premises, temporarily or· permanently, for sale or otherwise, unless with written permission endorsed on this policy, excepting the use of refined coal, kerosene, or · other carbon oil for lights, if the same is drawn and the lamps filled by daylight; otherwise this policy shall be null and void;" is avoided if . kerosene or other carbon oil is drawn upon .the premises near a lighted lamp by any person.acting by direction or under authority of the · assured's· lessee; although .there was attached to the policy at the time of its issue a printed slip, signed by the· insurer, "privileged to use kerosene· oil· for lights, lamps to be filled and trimmed by daylight only;" and although ·the insurer has since written in the margin of the policy, "privileged ·to keep not exceeding five barrels of oil on said premises."

*Liverpool and London Insurance Co.* v. *Gunther*, 116 U. S. 113, affirmed.

· When there is no evidence· to warrant a verdict for the plaintiff, so that if such a verdict were returned it would be the duty.of the court to set it aside, a verdict may be directed for the defendant. ·

IN CONTRACT;· on a policy of insurance. Judgment for defendant. Plaintiff sued out this writ of error. The· case is stated in the opinion.

*Mr. C. Bainbridge Smith* for plaintiffs in error.

*Mr. William Allen Butler* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action brought by a citizen of New York against a British corporation on two policies of fire insurance, dated November 16, 1877, and extended to July 15, 1880, the one on buildings, and the other on fixtures, furniture and other personal property in and about the same.

Each policy described the principal building as follows: "The two-story frame hotel building, with one-story frame kitchen and two-story frame pavilion adjoining and communicating, situated on Gravesend, Bay of Bath, Kings County, Long Island; (it is understood that the above property is to be occupied by a family when not in use as a hotel;) privilege to use gasoline gas, gasometer, blower and generator being under ground about sixty feet from main building in vault, no heat employed in process."

Among the printed conditions of each policy were the following:

"If the assured shall keep gunpowder, fire-works, nitroglycerine, phosphorus, saltpetre, nitrate of soda, petroleum, naphtha, gasoline, benzine, benzole, or benzine varnish, or keep or use camphene, spirit gas, or any burning fluid or chemical oils, without written permission in this policy, then and in every such case this policy shall be void."

"Petroleum, rock, earth, coal, kerosene or carbon oils of any description, whether crude or refined, benzine, benzole, naphtha, camphene, spirit gas, burning fluid, turpentine, gasoline, phosgene or any other inflammable liquid are not to be stored, used, kept or allowed on the above premises, temporarily or permanently, for sale or otherwise, unless with written permission endorsed on this policy, excepting the use of refined coal, kerosene or other carbon oil for lights, if the same is drawn and the lamps filled by daylight; otherwise this policy shall be null and void."

Attached to and pasted on the face of each policy at the

time of its issue was a printed slip, signed by the defendant's agents, and in these words: "Privileged to use kerosene oil for lights, lamps to be filled and trimmed by daylight only." And on the margin of the first policy were written and signed by the defendant's agents these words: "September 17, 1878, Privileged to keep not exceeding five barrels of oil on said premises."

At the first trial, a verdict was returned for the plaintiff, which was set aside and a new trial ordered by this court. 116 U. S. 113.

Afterwards the plaintiff died, and the action was revived in the name of his executors; and the answer was amended by leave of court, so as to set up, among other defences, as a breach of the second condition above quoted, "that kerosene, carbon oil or other inflammable liquid, so stored, used, kept or allowed on said premises as aforesaid, was drawn, not by daylight, but at or after dusk or dark and with a lighted lamp or lantern near, in violation of the express terms of the said condition, and that the fire which destroyed said premises was caused by such proximity of said lighted lamp; and the defendant further avers that it is advised and believes that the said policies thereby became and were null and void."

A second verdict for the plaintiffs was set aside by the Circuit Court, for the reasons stated in its opinion reported in 34 Fed. Rep. 501.

At the third trial, the plaintiffs introduced in evidence the policies, and renewal receipts continuing them in force until July 15, 1880, and proved the assured's ownership of the property insured; and the parties agreed that it was destroyed by fire on August 15, 1879, and that the amount of the loss, with interest, was $41,116.64.

The defendant proved by uncontradicted evidence that a barrel of about fifty gallons of kerosene was bought by Walker, the lessee of the premises, on August 13, 1879, and on the next day put by him in the oil room under the pavilion, which was a low room about twelve feet square, with doors opening into other rooms only. There was conflicting evidence upon the question whether any gasoline, naphtha or benzine was kept in

the oil room at the time of the fire. It was admitted that in 1878 the pavilion had been lighted by gasoline generated in a gasometer under the privilege in the first clause of the policy, but that its use was discontinued in the fall of 1878, and it was not used in 1879.

The only testimony introduced as to the cause of the fire was in substance as follows:

The defendant proved that the assured testified at the first trial, that on August 15, 1879, about dusk, he was seated on the piazza of the hotel, in sight of the pavilion, and saw some men with pails and a light; that his attention was attracted by shouts of children playing about in front, and he immediately looked back again and saw the men come out "as though they were on fire," and it did not occur to him that there was a fire in the oil room, although he saw it: that he called to the men to roll in the high grass, and one of them did so, and another ran into the water, and in another instant he saw the oil room burning, and the building immediately caught fire and in an hour or less was level with the ground.

The defendant called as witnesses the two men last mentioned, who testified that they had been sent from another hotel a mile off with two ordinary wooden pails to get five gallons of gasoline: that Walker directed one Schuchardt, a man in his employ, to let them have the oil; that Schuchardt, carrying a lighted glass stable lantern with small holes around the top, took them into the oil room, and drew the oil from a barrel, through a piece of pipe used as a faucet, into the pails, one of which leaked, and much oil was spilled upon the floor; that the lantern was very near the barrel, and presently there was a blue flame across the floor, and the whole room was in a blaze of fire; that Schuchardt got out first, and died of his burns; that one of the witnesses rolled in the grass and was little injured, and the other, who ran into the water, was so severely burned as to be obliged to keep his bed for three months.

The defendant moved the court to direct a verdict for the defendant, "on the ground that, as the established cause of the fire was the drawing in the oil room of the insured prem-

ises about dusk, in the vicinity of a lighted lamp, of a fluid product of petroleum under the circumstances shown by the evidence, not for filling lamps on the insured premises, but for another and different purpose, this of itself, and irrespective of other questions in the case, constitutes a violation of the several contracts of insurance in force at the time of the fire, as contained in the policies respectively, thereby rendering the said policies and each of them void, and defeating the right of the plaintiffs to recover in this action."

The plaintiffs requested the court to submit to the jury the questions "whether there was any naphtha, gasoline or benzine on the insured premises at the time of the fire," and "whether the fluid which was drawn from a barrel in the oil room at the time of the fire was so drawn in the presence of a lighted lamp."

The court denied the plaintiffs' requests and directed a verdict for the defendant. The plaintiffs excepted to these rulings, and sued out this writ of error.

Each of the policies in suit contains two conditions concerning the keeping or use, without written permission in or upon the policy, of naphtha, gasoline, benzine, or any burning fluid or chemical oil, upon the premises. By the general terms of the first of these conditions, the policy is avoided if the assured shall "keep or use" any of these articles. By the more specific provisions of the other condition, the prohibited articles "or any other inflammable liquid are not to be stored, used, kept or allowed" on the premises, "temporarily or permanently, for sale or otherwise," except certain articles named, and for the purpose and with the precautions therein specified, namely, " excepting the use of refined coal, kerosene or other carbon oil for lights, if the same is drawn and the lamps filled by daylight; otherwise the policy shall be null and void."

The printed slip, bearing the words " Privileged to use kerosene oil for lights, lamps to be filled and trimmed by daylight only," was attached to each policy and delivered with it, and must therefore be construed in connection with and as part of it, and not as superseding any consistent clause in the

body of the policy. · It is suggested· that there is an inconsistency between the slip and the exception above referred to. But the two, upon being compared with one another, disclose no such inconsistency; and differ only in that the exception regulates the drawing of the oil, which the slip does not, while the slip regulates the trimming of the lamps, which the exception does not. Taking the exception and the slip together, the effect is the same as if they had been incorporated into a single sentence, so as to permit the use of kerosene or like oil "for lights, if the same is drawn and the lamps are filled and trimmed by daylight only."

In the exception, as well as in the slip, the words "for lights" are clearly restricted in meaning to lighten the insured premises only, and the words "by daylight" are intended, not to denote day-time as opposed to night-time, but to prevent the use of any artificial light from which the oil might catch fire.

The clause written in the margin of one policy, granting a privilege "to keep not exceeding five barrels of oil on said premises," cannot reasonably be construed as intending to dispense with any of the carefully prepared printed regulations concerning the precautions to be taken in handling and using it.

The clause following the description of the principal buildings in each policy, "privilege to use gasoline gas, gasometer, blower and generator being under ground about sixty feet from main building in vault, no heat employed in process," does not affect the case; for the use of the gas apparatus had been discontinued some time before the fire; and, as has been already decided, when this case was before us at a former term, that clause did not sanction the keeping or use of gasoline or other burning fluid except for actual use in that apparatus. 116 U. S. 130.

It has also been decided, that a breach of the conditions by any person permitted by the assured to occupy the premises was equivalent to a breach by the assured himself; and that the assured was chargeable with any acts of his lessee in keeping upon the premises any of the prohibited articles, although

they were not intended to be used there, but for lighting other places.  116 U. S. 128, 129.

There can be no doubt, therefore, that both policies were avoided if kerosene, gasoline or any other carbon oil was drawn upon the premises near a lighted lamp by any person acting by the direction or under the authority of the lessee; and what the particular kind of carbon oil so drawn was, is quite immaterial.

The testimony of the assured himself, that just before the fire he saw some men with pails and a light near the pavilion under which the oil room was, and presently afterwards saw two of the men come out "as though they were on fire," and in another instant saw the oil room burning, and the building immediately caught fire and within an hour was level with the ground, of itself strongly tended to the conclusion that the fire was caused by such a breach of the conditions of the policy.

But this conclusion was established beyond all reasonable doubt by the testimony of the two men whom he saw come out, the substance of which has been already stated, and the accuracy and credibility of which is not impaired in any essential point by the thorough cross-examination to which they were subjected at the trial, or by a careful comparison with their testimony given before a coroner's jury ten days after the fire, and introduced in connection with their cross-examination.

If the case had been submitted to the jury upon the testimony introduced, and a verdict had been returned for the plaintiff, it would have been the duty of the court to set it aside for want of any evidence to warrant it.  Under such circumstances, it is well settled that the court was not bound to go through the idle form of submitting the case to the jury, but rightly directed a verdict for the defendant.  *Scho-field* v. *Chicago, Milwaukee & St. Paul Railway*, 114 U. S. 615, 619, and cases there cited; *Robertson* v. *Edelhoff*, 132 U. S. 614, 626.

*Judgment affirmed.*