THE MISSOURI PACIFIC RAILWAY COMPANY v. I. A. PREWITT AND MARY I. PREWITT. *

No. 264.

1. SPECIAL FINDINGS, *Examined.* The special findings set forth; *held*, consistent with the general verdict.

2. NEGLIGENCE—*Infant, not Trespasser.* Negligence cannot be attributed to a child of the age of two years and four months; neither is a child of this age, in going upon a railroad track, such a trespasser as to forfeit redress from injury resulting from the negligence of the railroad company.

3. ———— *Railroad—Duty of Engineer.* The duty of an engineer in charge of a passenger-train, when he discovers an object upon the track, the nature of which he does not understand, is, if possible, to bring his train under control, until the nature of the object is known, that he may be able to stop, if necessary, to prevent injury.

* Reversed in supreme court, November 5, 1898. See 59 Kan. 734. REP.

Error from Butler district court; C.W. SHINN, judge. Opinion filed January 14, 1898. Affirmed.

*J. H. Richards* and *C. E. Benton*, for plaintiff in error. *Shinn & Knowles*, for defendants in error.

The opinion of the court was delivered by

SCHOONOVER, J.: This action was brought against plaintiff in error in the district court of Butler county by defendants in error to recover damages for the death of their infant son.

It is alleged by defendants in error that on the third day of March, 1892, Bertie Prewitt, an infant of the age of two years and four months, was on the railroad track of plaintiff in error between the stations of Benton and Towanda; that the railroad was not fenced; that the appliances for stopping the train were out of repair, and that plaintiff in error, by its agents, servants, and employees, so carelessly, negligently and unskilfully managed and conducted its train that it ran against and over Bertie Prewitt and killed him.

The plaintiff in error answered by general denial and alleged contributory negligence. The case was tried to a jury, and they returned a verdict in favor of defendants in error for $650. The parties, both plaintiffs and defendant, submitted to the jury the special questions, which were answered and returned with the general verdict. The plaintiff in error moved for judgment on the special findings of fact, which motion was overruled.

The railway company brings the case here for review and asks for judgment in its favor.

From the findings of the jury it may be stated, that Bertie Prewitt was two years and four months old at

the time of his death ; that when he was struck by the
passenger-train he wore a faded dress, and was lying
motionless on the southern slope of the surfaced earth
at a place not frequented by children, about 147 rods
from any public highway or crossing, and two and
one-half miles from the nearest station.   It may be
further stated, that at the time of the injury the train
was running down grade at a rate of speed of about
thirty miles an hour ; that the engineer and fireman
in charge were men of sobriety, good habits, and skil-
ful ; that the train was equipped with the best modern·
appliances for the stopping of the engine and train in
cases of emergency ; and that all the appliances were
in good working order at the time of the accident.
The serious question presented is, Did the plaintiff in
error exercise due care, after the engineer discovered
an object upon the track and before he knew it was
a child ?   Upon this point the jury found, in answer to
questions submitted by plaintiffs below, as follows :

"1.  Did the engineer, when he discovered an ob-
ject upon the track, make any effort to slacken the
speed of his train, so that it could be stopped, if nec-
essary, before passing over the object?   A. Not when
he first discovered the object.

"2.  Could the engineer have stopped the train be-
fore striking the child, had he taken such measures as
were in his power at the time he first discovered the
object on the track and before he knew and recognized
it to be a child?   A.  Yes.

"3.  Were the engineer and fireman in doubt as to
the nature of the object when they first discovered it
upon the track and until they recognized it as a child?
A.  Yes."

They also found, in answer to questions submitted
by plaintiff in error, as follows :

"10.  Is it not true that when the engineer in charge
of the engine first discovered the object, which after-

wards proved to be the said Bettie Prewitt, he believed that said object was a piece of paper or weed which had blown upon the track?    A.  No.

"11.  Is it not true that when the engineer first discovered the object, which afterwards proved to be Bertie Prewitt, upon the track, he believed it to be something that could not be injured and which would not endanger his train or the passengers upon it? A.  Yes.

"12.  Prior to the time that the engineer or fireman discovered that the object was a child, did they, or either of them, believe or have any reason to believe that a child might be upon the railway-track at that point?    A.  No.

"13.  Is it not true that from the time the object was first discovered upon the track by the engineer and fireman up to the time when they discovered that it was a child, both said engineer and fireman believed that it was a piece of paper or weed, or something of that character which could neither be injured nor do damage to the train?    A.  No.

"18.  Is it not true that both the fireman and the engineer were at their proper places and attending to their duties all the way from the station of Benton to the place where said Bertie Prewitt was injured? A.  No.

"19.  Did the engineer or fireman, prior to the time they, or either of them, discovered that the object was a child, have any idea that it was a living thing? A.  Yes.

"20.  Did the engineer sound the whistle after he discovered the object on the track and before he knew it was a child?    A.  Yes.

"21.  Is it true that the engineer immediately endeavored to stop the train when he discovered that the object was a child?    A.  Yes.

"22.  Immediately upon discovering that the object was a child, did not the engineer reverse his engine, open the sand lever and throttle, and apply the air-brakes to the train?    A.  Yes.

"23.  Was not the engineer unable to stop the train

after he discovered that the object was a child, in time to avoid the accident? A. Yes.

"53. Does not the evidence show that when the engineer and fireman first discerned the child they did not know what it was, but thought it was a paper or weed? A. Yes.

"54. Does not the evidence show that neither the engineer nor fireman knew that it was a living creature until after the engineer asked the fireman what it was, and just prior to the time that he reversed his engine and applied the brakes? A. Yes.

"55. Does not the evidence show that if the engineer had doubt at all as to what the character of the object was up to the time that he discovered that it was a child and the time when he applied the brakes and reversed his engine, he had no thought that it was a child or human being? A. Yes."

It is clear from the answers to questions 10 and 11 that when the engineer first discovered the object upon the track he did not believe it to be a paper or a weed, neither did he believe it to be anything that could be injured or that would endanger his train or the passengers upon it. The jury find in answer to question 13 that this impression did not continue up to the time they discovered that it was a child; they were in doubt, they did not then believe that the object was of that character which could neither be injured nor do damage to the train. The whistle was sounded, and before they discovered it was a child they "had an idea that it was a living thing." Findings 19 and 20.

Our attention is called to question 53. The answer to the first part of the question is consistent with former answers, while the answer to the latter part is contradictory. The jury, in answer to two direct questions, having said that the engineer did not believe, when he first discovered the object, that it was

a paper or weed, we cannot say, from their answer to the latter part of this interrogatory, the phraseology of the question being considered, that the findings are inconsistent.

No effort was made to stop the train or bring it under control until the engineer discovered that the object was a child. Then everything was done that could be done to save the life of the child.

The findings relating to the parents' negligence are against the plaintiff in error. Negligence cannot be attributed to a child of the age of two years and four months; neither is a child of this age, in going upon a railroad track, such a trespasser as to forfeit redress from injury resulting from the negligence of the railroad company.

In all cases where human life is involved, every doubt should be determined in favor of safety. The duty of an engineer in charge of a passenger-train, when he discovers an object upon the track the nature of which he does not understand, is, if possible, to bring his train under control until the nature of the object is known, that he may be able to stop, if necessary, to prevent injury.

In support hereof, see *Keyser v. C. & G. T. Rly. Co.*; 56 Mich. 559; *Isabel v. H. & St. J. Rld. Co.*, 60 Mo. 475; *Keyser v. C. & G. T. Rly. Co.*, 66 Mich. 390, 33 N. W. Rep. 867; 2 Wood's Railway Law, 1264, note 2.

The judgment of the district court is affirmed.