## Union Stock Yard & Transit Co. v. James Butler, by his Next Friend.

1.  TRESPASSERS—*Children upon Dangerous Premises.*—The doctrine that a child can not be regarded as a voluntary trespasser because he is induced to enter upon dangerous premises by the owner's own conduct has no application to a case where a child enters upon such premises by the invitation of an older brother who is himself there for unlawful purposes.

Union Stock Yard & Transit Co. v. Butler.

2. RAILROADS—*Duty Toward Children When Trespassers.*—The duty which a railroad company owes toward children in the habit of going upon its grounds is not to keep a constant watch, or to use extraordinary care to prevent their approach, but when discovered upon its grounds the law requires the exercise of care and proper diligence to prevent injuring them.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County. Heard in the Branch Appellate Court at the October term, 1899. Reversed. Opinion filed November 20, 1900.

Statement.—This is a suit for personal injury. Appellee at the time of the injury was between four and five years of age. Appellant was the owner of the premises upon which the accident occurred, constituting a part of the Union Stock Yards in Chicago, and containing storage tracks, some fifteen in number, which tracks were at the time nearly full of cars. The yards were for the most part inclosed along Forty-seventh street with a high board fence, but at Center avenue and Forty-seventh street there was an entrance from the south, said to be about twenty-five feet in width, left open and used by the public. Whether Center avenue where it passes into the yards is a public street or not, is a question in dispute. Just east of Center avenue, extended into the yards, the storage tracks on one of which the accident occurred branch out, running east, and the injury was inflicted at a point more than eight hundred feet from the east line of Center avenue extended.

The injured boy apparently entered the yards at the Center avenue entrance. His older brother had just before gone in with a couple of baskets to gather grain or other material falling from the cars there stationed. Observing the little fellow going north on Center avenue, and noticing that switching was going on in the yards, the older brother states that he called appellee to him, impliedly to have him under his supervision. They remained together a short time picking up grain and coal, when the little fellow said he wanted to go home. He thereupon started to crawl under a car standing on one of the side tracks, and while still under it, that car, with a line of others on the

same track, was bumped into and moved two or three feet, by a switch engine apparently coupling onto cars at the end of the line a considerable distance away. Appellee's hand and foot were injured.

The premises where the injury occurred were used as a railroad freight yard, for the reception and storage of freight cars, and there is evidence to the effect that more then twenty engines and at least two hundred cars are moved in and out of this yard daily. The older boy had been accustomed to go into the yards more or less for a year or more, and had taken the younger boy with him once or twice before. There is no direct evidence how appellee entered the yards, though the evidence would justify the belief that as above stated he entered at Center avenue, but he could have gone in at other places. He was observed by his brother going north on Center avenue, having crossed the tracks when he was called back. There is evidence tending to show that Center avenue, so called, where it crosses the yards, has been used as a thoroughfare by the public having occasion to visit the Stock Yards for over twenty years; and though never dedicated as a street, it is claimed nevertheless that it has by such user become a public street by prescription.

WINSTON & MEAGHER, attorneys for appellant; FREDERICK R. BABCOCK, of counsel.

R. WILSON MORE, attorney for appellee; FRANK R. CHILDS, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court. The declaration charges appellant with negligence in permitting appellee, a boy of tender years, to go upon the tracks where he was hurt; that the premises were dangerous; that appellant failed to maintain a competent watchman at the entrance at Center avenue, and failed to instruct its watchmen to keep out children, who, it is charged, were likely to be attracted and invited by scenes of activity and interest within.

Whether Center avenue be regarded as a public street or not, it is not disputed that it is used daily as a thoroughfare by large numbers of people, young and old; that children cross it every day on legitimate errands, and that from it boys of all ages are frequently in the habit of entering the freight yard in question, sometimes to steal coal or grain from cars, or, as in the present case, to pick up coal and grain scattered upon the ground from loaded freight cars. It is contended by appellant that it is impossible, by any mechanical device, and is not the duty of a railroad company to absolutely prevent children from trespassing upon a railroad yard or right of way from street crossings in city or country. Evidence sought to be introduced to prove such impossibility was ruled out, upon appellee's objection. This evidence might properly, we think, have been admitted. It appears that appellant had inclosed its said premises, except at entrances and where its tracks crossed the place left open for the use of the public upon Center avenue extended. It would not have been improper to show, what perhaps would not be denied, that if the portion of the premises over which Center avenue, so called, extends, is used as a public street, it would be as impossible to inclose the tracks crossing there as at any other railroad crossing.

That the premises were dangerous for children playing or being among the cars on these storage tracks, is not questioned. There was no passage way across the tracks, except by crawling under or climbing between or over the cars. These were liable to be moved in the process of switching, at any time, upon any of the tracks, and without special warning. It is obvious that an adult, injured as was this boy, while trespassing upon the appellant's grounds, and exposing himself in like manner to the risks of injury, would have been considered guilty of contributory negligence. Appellee may have been too young to be so chargeable, yet he can not recover, except it be made to appear that appellant has been guilty of some neglect of duty, in consequence of which the injury occurred. (Toledo, W. &

W. Ry. Co. v. Grabel, 88 Ill. 441.) No evidence was
introduced in behalf of appellee to show, nor is it claimed
that there was any negligence on the part of appellant in
moving its cars, whereby the injury was directly inflicted.
The negligence complained of is that alleged at the entrance
from Center avenue and Forty-seventh street, in allowing
a boy of tender years to go into the yards at all, and expose
himself to injury, such as appellee received. " This is not,"
according to appellee's counsel, " a railroad case, but a dan-
gerous premise case."

While it is a general rule that private owners of property
are under no obligations to keep their premises in safe con-
dition, as against strangers or trespassers who are there
without invitation, yet an exception exists in the case of
children of tender years. The owner may be liable if prem-
ises are left unguarded, which are supplied with danger-
ous attractions, appealing to childish curiosity and instincts,
for such premises are regarded as holding out implied invi-
tations to such children. (City of Pekin v. McMahon, 154
Ill. 147, and cases there cited. Siddell v. Jensen, 168 Ill. 43.)
In the former case (on p. 152), it is said :

"The question whether a defendant has or has not
been guilty of negligence in case of such an accident upon
his land to a child of tender years, is for the jury. Involved
in this question is the further question, whether or not the
premises were sufficiently attractive to entice children into
danger, and to suggest to the defendant the probability of
the occurrence of such accident; and therefore such further
question is also a matter to be determined by the jury."

But a question of this kind to be submitted to a jury
must be based upon evidence of a nature such as to justify
the finding. In the present case the evidence is undisputed
that appellee was seen by his older brother on that part of
Center avenue, so called, which extends into or across the
appellant's yards, in a place of safety from switch engines
or cars. He had crossed appellant's tracks and was pro-
ceeding north. What his purpose was can only be conjec-
tured, and we need not undertake to guess. It is a fact,
however, that he was not then going in a direction which

would expose him to the injury he afterward suffered. His older brother, whether from a desire to keep him under his supervision or not, with what proves to have been mistaken judgment, himself induced appellee to enter the premises where he was injured. Appellee did not, therefore, place himself in the position where he was hurt because attracted by any activity or enterprise there carried on. It was as the older boy says, " a lonesome place." Whatever may have been the older boy's motive in being there, there is no evidence tending to show that appellee was attracted, even by the desire to pick up grain or coal. Indeed, he tired of the occupation very soon, and expressed his desire to go home. It was in the effort to leave the premises to which he had been invited, not by appellant, but by his brother, that he was injured. If we go further and inquire whether the older brother was invited to the premises by the opportunity of picking up grain or coal, and assume that the younger brother's presence followed, and was caused by an invitation to childish instincts which led his older brother thither, we find the undisputed evidence is, that the latter was there to obtain what he had no right to have without permission of appellant. He was not there in pursuit of amusement. He was there to obtain without permission property belonging to or under the care of appellant, which, whether of little or greater value, he had no right to take. The boy in such case can scarcely be said to have been invited there by any act of appellant, but by his own desire to possess himself unlawfully of the property of another. The case is not one in which premises supplied with dangerous attractions to children as a place for play, or exciting childish curiosity, are left unguarded; nor is the maxim, *sic utere tuo ut alienum non laedas*, applicable. The doctrine of the so-called turn-table cases is, " that the child can not be regarded as a voluntary trespasser, because he is induced to come upon the turn-table by the defendant's own conduct." City of Pekin v. McMahon, *supra*. Here the boy who was hurt was induced to go upon the premises in question by the invitation of an older brother who was

himself there for an unlawful purpose. In the case of Emerson v. Peteler, 35 Minnesota, 481, a boy five years old was killed by jumping or falling from the bumper of a car used in conveying material taken from a street in process of grading. It was contended that it was the duty of the defendant to provide watchmen whose special business it should be to keep boys from climbing on the cars, as children had been in the habit of doing. The court says:

"We do not think that the law required the defendant, under the circumstances, to provide police supervision to keep off intruders or trespassers, whether children or adults. * * * We discover no evidence in the case tending to prove negligence on the part of the defendant in conducting this work. Defendant's management, and all the arrangements for moving these cars, were reasonably safe, as respects danger to persons using ordinary care. This was the measure of defendant's duty. * * * Where there is no negligence the incapacity of a child who happens to be injured can not create any liability. * * * The duty which defendant owed these children was not to keep constant watch, or to use extraordinary care to prevent their approach, but, when discovered, in the exercise of ordinary care to use proper diligence to prevent any injury to them."

In Barney v. The Hannibal & St. Jo. R. R. Co., 126 Mo. 372, it was held:

"The rule applicable in what is known as the 'turn-table cases,' has no application in cases of this sort. Railroad cars and similar machinery are not 'dangerous machinery,' within the meaning of that rule, as abundantly and exhaustively shown, both directly and indirectly, in the following cases: Bishop v. Railroad, 14 R. I. 314; Catlett v. Railroad, 21 S. W. Rep. 1062; Railroad v. McLaughlin, 47 Ill. 265; Gavin v. City, 97 Ill. 66."

It was held that the "duty did not exist" to keep boys out of the railway yard, where the accident occurred.

It appears in the case at bar that appellant employed special policemen to guard its premises, who were assigned to special districts, and that the officer assigned to the district where the injury occurred, had orders to keep children from the tracks and tried to do so. The flagman at Center

avenue crossing had no such orders, it is true, but his duties were of a different character, and it is no evidence of negligence that he was not charged in addition to his special duty with police duty besides.

We find in this record no evidence of negligence on the part of appellant contributing in any way to the injury complained of. The injury to his foot and hand is a serious matter to the lad, and must excite sympathy, even though it should be true, as stated, that it will not disable him from earning his living in all ordinary ways. But we are unable to discover any legal ground upon which appellant can be charged with liability therefor.

A motion was made that the jury be instructed to find for the defendant. We think this should have been done. For the error in refusing such instruction the judgment of the Superior Court must be reversed.