## HARRIS v. ATLANTIC COAST LINE RAILROAD CO.

(Filed March 17, 1903.)

1. INSTRUCTIONS—*Findings of Court—Trial.*

   It is not error for the trial court to refuse to charge that certain facts in evidence are true.

2. INSTRUCTIONS—*Charge of Court.*

   The trial court is not required to charge in *ipsissimis verbis* of the request for instructions.

3. INSTRUCTIONS—*Trial.*

   The trial court is not required to dissect an erroneous prayer for instruction and to give that part that is good to the exclusion of the other.

4. ISSUES—*Negligence—Contributory Negligence—Last Clear Chance.*

   In an action for damages for personal injuries, it is not necessary for the jury to pass on the issue as to the last clear chance where they find the defendant was negligent and the plaintiff was not guilty of contributory negligence.

5. NEGLIGENCE—*Contributory Negligence—Bridges.*

   It is not negligence *per se* for a person to go upon a railroad bridge, but it is some evidence of contributory negligence.

6. NEGLIGENCE—*Instructions.*

   In an action for personal injuries it is not error to charge on the issue of negligence that the jury should consider whether or not the defendant failed to do what an ordinarily prudent and skillful person would have done under the circumstances.

   MONTGOMERY, J., dissenting.

ACTION by D. H. Harris, administrator of Cora Denton, against the Atlantic Coast Line Railroad Company heard by Judge *Francis D. Winston,* at October Term, 1902, of the Superior Court of EDGECOMBE County. From a judgment for the plaintiff, the defendant appealed.

*Gilliam & Gilliam,* and *Kitchin & Allsbrook,* for the plaintiff.

*John L. Bridgers* for the defendant.

DOUGLAS, J.    This is an action for damages for the killing of the plaintiff's intestate through the alleged negligence of the defendant.    The material facts are substantially set forth in the following testimony of the witness Manning:

J. W. Manning, for plaintiff, testified:—"I am 79 years of age; on the morning of Jan. 26th, 1900, left home with Mrs. Denton and her little boy six years old; I went with them to the Tar River railroad bridge; we went across the field and entered upon the railroad track about 150 to 200 yards of the bridge, walked down the track to the bridge; at the bridge we stopped and talked, looked back and saw and heard no train; no trains were usually passing at that hour, this between 9:00 and 10:00 o'clock in the morning; she asked me to stay there until she got over the bridge, she started to cross the bridge but had not reached the draw when I heard the train, I called to her to come back, she started, holding the boy by the hand; the boy stumbled and she was dragging him; she returned as soon as I called to her to do so and had gotten within a few feet of the end of the bridge, just near enough to reach my hand when the train struck her; I did not go on bridge but stood at the end of it besides the track; there is a "stop post" near the bridge, 20 or 25 yards from the end of the bridge, where trains usually stop, this train did not stop there, did not blow that I heard; the train was composed of 11 flat cars, 3 shanty cars and an engine, flat cars ahead, three shanty cars and then engine, train moving backward; I did not see any one on the shanty cars or flat cars until the train was close to the bridge, then conductor came running to end of flat cars and motioning to Mrs. Denton to get to one side; train was then not 20 feet from her, no "lookout" until then that I saw; did not see him signal the engineer; train did not slacken its speed until after it passed the "stop post," did not stop until after it had run over Mrs. Denton; one on track at the end of bridge can see the train

400 to 500 yards and Mrs. Denton could be seen some distance by one on the train; have seen trains pass over bridge frequently, the rule and custom is for trains to stop at "stop post" on each side of the bridge; there is also a "blow post" about one-half mile of the bridge, rule for trains to blow there, did not hear this train blow there; Mrs. Denton was killed and her little boy injured."

There was further evidence to the same effect and in fact while there was some contradiction as to the minor statements, the principal facts were practically admitted. Whatever contradiction there might be was a matter for the jury. The conductor in charge of the train testified in part that the train was required to stop in sight of the draw-bridge so that it could be seen if the draw was open; that when it came within sight of the bridge, the whistle was sounded and the train was stopped four or five hundred yards from the bridge, and then proceeded again; that he saw a woman on right hand side of track near bridge, but supposed she saw the train; that she walked ahead and went on bridge, and he then signaled the train to stop. This testimony is not very clear, but in any event the conductor saw the deceased as she went upon the bridge, and probably saw her when he stopped the train four or five hundred yards from the bridge.

We are not attempting to find facts or to weigh the evidence, but simply reciting portions of it to show its general bearing as applied to the defendant's exceptions. For instance, the defendant's seventh assignment of error is as follows: "That the court refused to instruct the jury as requested in that part of defendant's seventh prayer which reads as follows, 'That when she went on the bridge the train was only about 75 yards from her and she could have both seen and heard it, if she had been at all careful'." This is a request for the court to find three distinct facts, the distance of the train and the ability of the deceased both to see and

hear it.   The court had no such power, and, if it had, would hardly find such facts contrary to the defendant's own testimony.

There are fifteen assignments of error, none of which in our opinion can be sustained.   Thirteen of them are directed to the refusal of the court to give the defendant's prayers for instructions.   Nearly all were intrinsically erroneous, and could not have been given as requested.   Those that were correct were either given as requested, or included in his Honor's charge to the fullest extent to which the defendant was entitled.   Upon a request for special instructions, the court is not required to charge *in ipsissimis verbis* of counsel even when the prayer is correct.   *Norton v. Railroad,* 122 N. C., 910; *Cox v. Railroad,* 126 N. C., 103; *Railway Co. v. Horst,* 93 U. S., 201; *Railway Co. v. Volk,* 151 U. S., 73.   Nor is the court required to dissect an erroneous prayer and to give that part that is good to the exclusion of the other.   The judge may do so in his discretion, as he has done in the case at bar; but the two are generally so intermingled as to make the attempt difficult if not dangerous.

With so many exceptions relating to prayers of such length, it is neither necessary nor practicable to discuss them, separately and in detail.   Every material question in this case is practically decided in *McLamb v. Railroad,* 122 N. C., 862 and *Boggan v. Railroad,* 129 N. C., 154; 55 L. R. A., 418. The case at bar is in one material aspect stronger than either of those cases, as the jury found all the issues in favor of the plaintiff.   After finding that the deceased "was killed by the negligence of the defendant company" and that the deceased was not guilty of contributory negligence, it was not necessary for the jury to pass upon the third issue as to the last clear chance, but they have done so, and we see no reason to disturb their verdict.   The wording of that issue was as follows: "Notwithstanding the negligence of the deceased,

*if guilty of such negligence,* could the defendant have avoided the injury by the exercise of ordinary care ?"

It was necessary for a recovery by the plaintiff that the first issue as to the negligence of the defendant should have been found in his favor, as there can be no recovery unless the injury is the result of some negligence on the part of the defendant. When such primary negligence is found, the next inquiry is as to the contributory negligence of the plaintiff. If he has not been guilty of such negligence, then he is at once entitled to the issue of damages. If he has been guilty of contributory negligence and yet the defendant might, notwithstanding the negligence of the plaintiff, have avoided the injury by the exercise of ordinary care, the plaintiff can still recover. The nature and effect of these issues have been fully discussed by this court in the recent case of *Curtis v. Railroad,* 130 N. C., 437. There was certainly evidence tending to prove the negligence of the defendant.

The mere fact that the deceased went upon the railroad bridge was in itself some evidence of contributory negligence to be considered by the jury in connection with all the surrounding circumstances. It was not negligence *per se* but only evidence tending to prove negligence, which might be nullified or rebutted by other controlling circumstances. The courts are more and more abandoning arbitrary definitions and distinctions as to negligence, and coming down to the rule of the prudent man. Would a woman of ordinary prudence, in like circumstances with the deceased, looking up a straight track for 500 yards and seeing nothing, knowing that no trains were then due, and that if a train were to come, it would be required by rule and custom to stop before reaching the bridge, have undertaken to cross the bridge when she had no other convenient means of reaching her destination? The jury might well have answered such a question in the affirmative.

One of the defendant's exceptions is that the court instructed the jury that "in this cause you will, in considering whether the defendant was negligent, consider whether or not it failed to do what an ordinary prudent and skillful person would have done under the circumstances." We see no error therein. It is certainly correct as an abstract proposition of law. If the court had said nothing more, and had left the jury to apply the law as best they could, there would have been an error of omission; but this was but a small part of a long and elaborate charge in which every phase of the case was presented to the jury. Indeed, it might be questioned whether the charge as a whole was not too favorable to the defendant.

The judgment of the court below is
Affirmed.

MONTGOMERY, J., dissenting: The going by a wayfarer upon a railroad trestle or bridge so high that it would be dangerous to get off by leaping to the ground, is *per se* negligence.

In the case of *Little v. Railroad,* 118 N. C., 1072, this court said, "It was conceded and settled in *Clark v. Railroad,* 109 N. C., 430; 14 L. R. A., 749, that one who attempts to walk across an elevated trestle so high that it is dangerous to jump from it to the ground, is negligent, and that where he is injured by a train while crossing, it is the duty of a jury to find in response to an issue involving the question, that he contributed by his own carelessness to cause the injury." In *McLamb v. Railroad,* 122 N. C., 862, the defendant asked the court to instruct the jury that upon the whole evidence the plaintiff's intestate was guilty of contributory negligence. In the opinion of this court in that case, it was said by way of parenthesis that that instruction was not given for the reason that the third issue as to the negligence of the de-

ceased was, by consent of the plaintiff, answered in the affirmative before the charge of the court was read.    Plaintiff's intestate there, was killed while walking on a trestle.

I think his Honor should have instructed the jury that the plaintiff as a matter of law was guilty of contributory negligence in going upon the trestle.    That being so, it was highly important that the third issue, which involved what is called the last clear chance on the part of the defendant, should have been submitted to the jury upon full and thorough instructions in the light of negligence on the part of the plaintiff's intestate.