## McCARTHY v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, Second Circuit. February 6, 1917.)

No. 124.

1. RAILROADS ⟨⟨⟩357—INJURIES TO PERSONS ON TRACK—"NEGLIGENCE."
    In an action for the death of a person killed on a railroad track, plaintiff, if he is to recover, must show that the railroad failed in the performance of some duty which it owed to decedent, from which there is a reasonable probability the accident resulted, since "negligence" is the violation or disregard of some duty.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1235.

    For other definitions, see Words and Phrases, First and Second Series, Negligence.]

2. RAILROADS ⟨⟨⟩103(1)—DUTY TO FENCE—ABSENCE OF STATUTE.
    In the absence of statutory regulations, railroads are under no duty to fence their tracks.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 315.]

3. RAILROADS ⟨⟨⟩361—DUTY TO FENCE—STATUTE—DUTY TO PERSONS.
    Laws N. Y. 1892, c. 676, § 32, providing that no railroad need be fenced when not necessary to prevent horses, cattle, sheep, and hogs from going on its track from the adjoining lands, does not apply to persons.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1246.]

4. LANDLORD AND TENANT ⟨⟨⟩162—DUTY OF LANDLORD—FENCING RAILROAD TRACKS.
    A railroad company, which leased premises adjacent to its tracks for a family dwelling, does not, as a landlord, owe the tenant a duty to erect a fence between such premises and the railroad tracks.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 629.]

5. RAILROADS ⟨⟨⟩389(1)—INJURIES TO PERSONS ON TRACK—PROXIMATE CAUSE—FAILURE TO FENCE.
    The failure of a railroad company to fence its tracks cannot be held the proximate cause of the death of a boy killed on the tracks where there is no evidence that he found his way thereon at a place unfenced.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1319.]

6. RAILROADS ⟨⟨⟩355(1)—INJURIES TO PERSONS ON TRACK—"TRESPASSER"—CHILD.
    Any person who goes on the premises of another out of curiosity, or for his own purposes, and without invitation, express or implied, and not in the performance of a duty to the owner, is a trespasser, and a child between six and seven years old, who goes upon a railroad track, is a "trespasser," notwithstanding his tender age.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1220, 1223, 1227, 1235.

    For other definitions, see Words and Phrases, First and Second Series, Trespasser.]

⟨⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. RAILROADS ⚙⟶359(1), 376(2)—INJURIES TO TRESPASSER—EXTENT OF DUTY.

A railroad company owes no duty to exercise active vigilance to provide against injuries to trespassers on its tracks until their presence is known, but must exercise reasonable care to avoid injuring them after discovering their peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1238, 1276.]

8. RAILROADS ⚙⟶359(2)—INJURIES TO TRESPASSER—TRESPASSING CHILD.

A railroad company ordinarily owes no greater duty to a trespassing child than it owes to an adult trespasser, and is not bound to use active vigilance, or to provide against injuring the child.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1239.]

9. RAILROADS ⚙⟶376(2)—INJURIES TO TRESPASSER—DUTY AFTER DISCOVERING PERIL.

When those in charge of an engine or train realize that a trespasser will not or cannot save himself, and will be injured unless they prevent it, it is their duty to use all means at hand consistent with the safety of their engine or train to prevent injury, and their failure to do so is negligence, for which the company is liable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1276.]

10. RAILROADS ⚙⟶359(2)—INJURIES TO TRESPASSER—NEGLIGENCE—OPPORTUNITY TO DISCOVER TRESPASSER.

In an action for the death of a child, who was trespassing on a railroad track, the fact that the engineer had an unobstructed view for a great distance is immaterial, if in fact he did not discover the child's presence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1239.]

11. TRIAL ⚙⟶168—TAKING CASE FROM JURY—POWER OF COURT—MOTION FOR DIRECTED VERDICT.

In a proper case, the trial judge, in the exercise of a sound discretion, may direct a verdict, and if in such case a motion is made for directed verdict, it is error to refuse it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 376–380.]

12. TRIAL ⚙⟶139(1)—DIRECTED VERDICT—INFERENCES FROM EVIDENCE.

A verdict can be directed for defendants only when no recovery can be had by plaintiff upon any view which can properly be taken of the facts, with all inferences that the jury could justifiably draw therefrom.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341.]

13. RAILROADS ⚙⟶400(1)—INJURY TO TRESPASSERS—DIRECTED VERDICT—CONFLICTING EVIDENCE.

In an action for death of a child while trespassing on a railroad track, conflicting evidence as to the child's position on the track, and whether warnings were sounded, does not prevent the direction of a verdict for defendant, where there is no evidence that the engineer discovered the child's presence, or that the circumstances were such that he should have anticipated the presence of a person at that place.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365, 1367.]

14. RAILROADS ⚙⟶367—INJURY TO TRESPASSERS—DUTY TO KEEP LOOKOUT.

Where there is reason to expect that persons may be on the track at the place where an accident occurs, the railroad company is liable for the engineer's neglect to look out for them, even if he did not see them; but, if no reason exists for expecting them there, the engineer is not negligent in not looking out for them.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1257, 1258.]

In Error to the District Court of the United States for the Southern District of New York.

Action by William J. McCarthy, as administrator of William F. Mc-

Carthy, deceased, against the New York, New Haven & Hartford Railroad Company. Judgment for the defendant on directed verdict, and plaintiff brings error. Affirmed.

The plaintiff is the duly appointed administrator of William F. McCarthy, deceased, and resides in the village of Port Chester, county of Westchester, state of New York. The defendant is a corporation organized and existing under the laws of the state of Connecticut, having an office for the transaction of business in the borough of Manhattan in the city of New York.

Charles F. Dalton, of Port Chester, N. Y. (Anthony J. Ernest, of New York City, of counsel), for plaintiff in error.

Charles M. Sheafe, Jr., of New York City (James W. Carpenter, of Brooklyn, N. Y., of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. This is an action to recover damages for causing the death of the plaintiff's son through negligence. The court below dismissed the complaint on the ground that there was no evidence showing negligence on the part of defendant. The accident which resulted in decedent's death occurred on April 24, 1902. The action was commenced in December, 1902. It was not brought on for trial until May 8, 1912, and judgment was not entered until January 11, 1916. It is understood that the long delay in the prosecution of the suit was occasioned by the plaintiff's lack of means.

The intestate resided with his father, the plaintiff, and at the time of his death was between six and seven years of age. The house they occupied was rented from defendant, the premises abutting on defendant's right of way. The decedent was on the tracks of defendant when he met his death. The objection was not taken that there could be no recovery as matter of law because of the negligence of the child's parents in letting the decedent, non sui juris, run around alone. This objection, not having been raised, will not be considered.

[1] As negligence is the violation or disregard of some duty, it is necessary that the plaintiff, if he is to recover, must show that the defendant failed in the performance of some duty which it was under as respects the decedent, and he must establish by evidence circumstances from which it may fairly be inferred that there is reasonable probability that the accident resulted from the failure to perform that duty.

[2] Defendant's tracks were not fenced where this accident occurred. But the general rule is well established, and is that, in the absence of statutory regulations imposing the duty, railroads are under no duty to fence their roads. See 11 R. C. L. p. 890; Cyc. 1170; Campbell v. N. Y., etc., R. Co., 50 Conn. 128; Morss v. Boston, etc., R. Co., 2 Cush. (Mass.) 536; Continental Imp. Co. v. Phelps, 47 Mich. 299, 11 N. W. 167.

[3] Chapter 676, § 32, of the Laws of 1892 of the state of New York, which was in force at the time of the accident, provided in part as follows:

"No railroad need be fenced, when not necessary to prevent horses, cattle, sheep and hogs from going upon its track from adjoining lands."

By implication the wording of this statute does not apply to persons, and it has been so held. See Clarke v. New York Central, 104 App. Div. 167, 170, 93 N. Y. Supp. 525.

[4] In the case at bar the railroad was the plaintiff's landlord, and leased the premises to him, to be occupied by him and his family, knowing that there was no fence at the rear, and that the tracks were within 25 or 30 feet of the back stoop; but the defendant, as landlord, owed no legal duty to its tenant, the father of the decedent and the plaintiff in this action, or to the decedent himself as a member of plaintiff's family, to erect a fence. As a landlord it fulfilled its obligations to the tenant when it surrendered to him the premises in the condition in which they were when the lease was signed.

The appellant calls our attention to the case of Hayes v. Michigan Central R. R. Co., 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410 (1884). In that case a boy between eight and nine years of age, but deaf and dumb, was struck by defendant's train, one or more wheels of a car passing over his left arm, necessitating its amputation at the shoulder. The line of railroad ran parallel with and adjacent to a public park in which the boy had been at play. The railroad company had failed to build a fence between the park and the tracks at the point where the accident occurred. The court below directed the jury to return a verdict for defendant. But the Supreme Court reversed the judgment and awarded a new trial, and held that, as the defendant railroad had failed to fence, the plaintiff could maintain an action and recover if he established the fact that the accident was reasonably connected with the failure to fence. In its opinion the court said:

"To leave the space between the park and the breakwater, traversed by the numerous tracks of the railroad company, open and free, under the circumstances in proof, was a constant invitation to crowds of men, women, and children frequenting the park to push across the tracks at all points to the breakwater, for recreation and amusement, at the risk of being run down by constantly passing trains. A fence upon the line between them might have served at least as notice and signal of danger, if not as an obstacle and prevention. For young children, for whose health and recreation the park is presumably in part intended, and as irresponsible in many cases as the dumb cattle, for whom a fence is admitted to be some protection, such an impediment to straying might prove of value and importance."

In that case the railroad company, however, had the duty imposed upon it by a municipal ordinance, which had the force of a statute, to fence within the municipal limits; and the language of the ordinance clearly indicated that the purpose of the requirement of fencing was for the protection of persons and property as well as of animals from danger. The opinion makes it plain that the decision rested on the ordinance.

[5, 6] There is nothing in this record which shows that the decedent found his way to the defendant's tracks by the way of the unfenced rear yard. There is no relation of cause and effect shown between the nonexistence of the fence and the presence of the child on the track. The decedent was a trespasser upon defendant's tracks.

Any person who goes upon the premises of another is a trespasser, if he goes there out of curiosity or for his own purposes and without invitation, express or implied, and not in the performance of a duty to the defendant. A child of tender years may be a trespasser. Holbrook v. Aldrich, 168 Mass. 15, 46 N. E. 115, 36 L. R. A. 493, 60 Am. St. Rep. 364; Thomas v. Chicago, etc., R. Co., 93 Iowa, 248, 61 N. W. 967. Although in Kansas City Suburban Belt R. Co. v. Herman (Kan. App.) 62 Pac. 543, it was held that a child four years old could not be a trespasser. And the same court in Missouri Pacific R. Co. v. Prewitt, 7 Kan. App. 556, 51 Pac. 923, held that a child two years old could not be a trespasser. The general rule, however, is that the tender age of the child cannot have the effect of raising a duty where none otherwise existed, and the fact that a trespasser is a child does not impose on the owner of property any duty to keep his premises safe. Nolan v. New York, etc., R. Co., 53 Conn. 461, 4 Atl. 106; Rodgers v. Lees, 140 Pa. 475, 21 Atl. 399; 12 L. R. A. 216, 23 Am. St. Rep. 250; Hughes v. Boston, etc., R. Co., 71 N. H. 279, 51 Atl. 1070, 93 Am. St. Rep. 518; Wabash R. Co. v. Jones, 163 Ill. 167, 45 N. E. 50.

[7, 8] The general rule is that a railroad company is under no duty or obligation to exercise active vigilance to provide against injury to trespassers on its tracks or right of way until their presence is known. Nolan v. New York, supra; McCreary v. Boston, etc., R. Co., 156 Mass. 316, 31 N. E. 126; Chesapeake, etc., R. Co. v. Farrow, 106 Va. 137, 55 S. E. 569, 10 Ann. Cas. 12; Southern R. Co. v. Chatman, 124 Ga. 1026, 53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675; Goodman v. Louisville, etc., R. Co., 116 Ky. 900, 77 S. W. 174, 63 L. R. A. 657; Ellington v. Great Northern R. Co., 96 Minn. 176, 104 N. W. 827. As to them the rule is that it must exercise reasonable care to avoid injuring them after discovering their peril. Remer v. Long Island R. Co., 48 Hun, 352, 1 N. Y. Supp. 124; Hepfel v. St. Paul, etc., R. Co., 49 Minn. 263, 51 N. W. 1049; Chesapeake, etc., R. Co. v. Nipp, 125 Ky. 49, 100 S. W. 246; Bartlett v. Wabash R. Co., 220 Ill. 163, 77 N. E. 96; Brown v. Boston, etc., R. Co., 73 N. H. 568, 64 Atl. 194; Harris v. Atlantic Coast Line R. Co., 132 N. C. 160, 43 S. E. 589; Chicago, etc., R. Co. v. Wilgus, 40 Neb. 660, 58 N. W. 1125. And as a rule the railroad owes no greater duty to a child who is a trespasser than it owes to an adult. Alabama Great Southern R. Co. v. Moorer, 116 Ala. 642, 22 South. 900. It is not bound to use active vigilance to discover its presence, or to provide against injuring it. Hamilton v. Detroit, etc., R. Co., 142 Mich. 56, 105 N. W. 82; Delaware, etc., R. Co. v. Reich, 61 N. J. Law, 635, 40 Atl. 682, 41 L. R. A. 831, 68 Am. St. Rep. 727; Estep v. Webster Coal, etc., Co., 213 Pa. 471, 62 Atl. 1082; Wagner v. Chicago, etc., R. Co., 124 Iowa, 462, 100 N. W. 332. And, as in the case of other trespassers, it is bound only to exercise ordinary care to avoid injuring the child after discovering its peril. Felton v. Aubrey, 74 Fed. 350, 20 C. C. A. 436; Nashville, etc., R. Co. v. Harris, 142 Ala. 249, 37 South. 794, 110 Am. St. Rep. 29; Union Stockyard, etc.,

R. Co. v. Butler, 92 Ill. App. 166; Baltimore, etc., R. Co. v. Bradford, 20 Ind. App. 348, 49 N. E. 388, 67 Am. St. Rep. 252.

[9] In Shearman & Redfield on Negligence (6th Ed.) pp. 1244, 1248, what we consider the correct rule is laid down as follows:

"The rule may be thus stated, when it is realized by those in charge of an engine or train that one, though a trespasser, will not or cannot save himself, and will be injured unless they can prevent it, then it is their duty, by the use of all the means at hand, consistent with the safety of the passengers, engine, or train, to do all in their power to prevent it; and the failure to do so, when the injury could thereby have been avoided, is negligence for which the company and such employés will be liable, notwithstanding the antecedent negligence or contributory negligence of one so injured. It is universally agreed that this rule applies to all cases in which the defendant or his agent is actually aware of the plaintiff's danger. Thus a locomotive engineer or motorman, after becoming aware of the presence of any person on or dangerously near the track, however imprudently or wrongfully, is bound to use as much care to avoid injury to him as he ought to use in favor of one lawfully and properly upon the track; that is to say, ordinary care with respect to anticipating injury before it becomes imminent, and the utmost care and diligence of which he is personally capable after he knows that it is imminent. He must promptly use all the usual signals to warn the trespasser of danger, and he must also check the speed of his train, and even bring it to a full stop, if necessary, unless the circumstances are such as to justify him, acting prudently, in believing that the traveler sees or hears the train and will step off the track in ample time to avoid all danger, without any diminution of speed of the train. These rules apply to all cases, even of the most outrageous negligence on the part of a person on the track, as, for example, where a person attempts to cross in the very front of a train, or where children or drunkards have actually fallen asleep lying across the rails."

[10] The engineer testified that he did not see the decedent until within 30 feet of him. There is no evidence which contradicts him in this particular, and no evidence that the engineer was keeping a lookout prior to his discovery of the decedent, so that it might be inferred he saw him sooner, and no evidence as to how long the decedent had been on the tracks before he was seen. The duty of the defendants as respects the decedent began when the engineer discovered him 30 feet ahead of the engine. Did the defendant from that time fail in its duty toward him? That the engineer could not have stopped the train after discovering the decedent is clear, if he did not see him until he got within 30 feet of him. He put the emergency brake on and tried to stop as quick as he could. His testimony was, and it is uncontradicted, that a train running 40 miles an hour could be stopped in 300 feet, more or less.

That there was an unobstructed view of the track for half a mile or more is unimportant, unless it was the duty of the defendant to have availed itself of this unobstructed view and to have observed whether its track was clear. Such a duty might have rested on defendant if its train had been approaching a crossing or a point where the public had been permitted to use the tracks as a pathway, so that it was bound to anticipate the presence of persons on the roadbed. That, however, is not this case. The defendant did not invite, entice, allure, or induce the decedent or any other person to come upon the tracks where this accident happened, and was under no obligation to anticipate the decedent's presence or the presence of any other persons

there. The rule was correctly laid down in Felton v. Aubrey, 74 Fed. 350, 356, 20 C. C. A. 436, 441 (1896), in a case which came before the Sixth circuit in which Judge Lurton said:

"Where no statute controls, the common law must determine the legal duty of a railway company in respect of the proper and prudent movement of its trains. That such companies have the right to a clear track, except where the public have also an easement of way, must be conceded. But upon its general track, where the public have no equal easement or right of way, a railroad company may operate its trains without regard to the possibility that unauthorized persons may be trespassers thereon. It need not anticipate the presence of such intruders, either upon its general track or in its strictly private yards."

[11] At the close of the plaintiff's case the counsel for defendant moved to dismiss the complaint, on the ground that no negligence had been proven on the part of the defendant. The court granted the motion, and the plaintiff was given an exception. It cannot be denied that a trial judge, in the exercise of a sound discretion, may, in a proper case, direct a verdict; and if the defendant asks the court in such a case to direct a verdict in its favor, it would be error to refuse. Railroad Company v. Jones, 95 U. S. 439, 24 L. Ed. 506 (1877).

[12] But a verdict can only be directed when no recovery can be had by the party against whom the verdict is given upon any view which can properly be taken of the facts. See Foster's Fed. Pr. vol. 2, p. 1556. In Louisville, etc., R. Co. v. Woodson, 134 U. S. 614, 10 Sup. Ct. 628, 33 L. Ed. 1032 (1890) the Supreme Court stated the rule as follows:

"It is the settled law of this court that 'when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant' (Randall v. Baltimore & Ohio Railroad, 109 U. S. 478, 482 [3 Sup. Ct. 322, 27 L. Ed. 1003]; Gunther v. Liverpool, etc., Ins. Co., 134 U. S. 110 [10 Sup. Ct. 448, 33 L. Ed. 857]); while, on the other hand, the case should be left to the jury, unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish (Dunlap v. Northeastern Railroad Co., 130 U. S. 649 [9 Sup. Ct. 647, 32 L. Ed. 1058])."

[13] The evidence is not full. That the examination of certain witnesses was not more searching surprises us. It does not appear how long the engineer had been observing the track when he claims he first saw the decedent. If that appeared, the jury could have judged of the probability of his story that he never saw the decedent until he was within 30 feet of him. And the witness who said he saw the decedent on the track before the train hit him was not asked how far away from the train the decedent was when he first saw him there. All this might have been very important, if it had been brought out. But, taking the testimony as we find it in the record, there appears a conflict in the evidence. A witness who had his shop 185 feet from the railroad track, and could see the tracks from his shop, testified that on the afternoon of the accident he saw the decedent sitting on the track with his back to the train, and that just as he "was going to holler to him to get away from the track the train ran and struck him." He testified he heard no whistle blown or bell rung before the boy was struck!

The mother of the decedent, who was in her house near by when the decedent was killed, testified that the door was' wide open at the time, and that the windows were open, and that no whistle was blown. Her testimony was: "There was no whistle blown."

The engineer testified positively that he sounded his whistle as soon as he saw the boy on the track, or alongside of the track, and that he at once put on the emergency brake. On the other hand, the engineer testified that the boy was not sitting on the track, but was running on the track right towards him when he discovered him; "the little fellow was just going over on the inside rail of my track." And he also testified that he immediately blew his whistle and put on 'the emergency brake.

The conflict of evidence under the circumstances is not important, for the reason that there is no evidence in the record which shows that the engineer saw the decedent before he was within 30 feet of him, and there is no evidence in the record which made it the duty of those in charge of the engine to have been looking ahead as they were approaching the locus in quo to see that the track was free from trespassers, and so sooner to have discovered the decedent. In New York, N. H. & H. R. Co. v. Kmetz, 193 Fed. 603, 607, 113 C. C. A. 471, 475 (1912), we there said:

"The engineer and fireman of the train which, according to the testimony, probably struck the plaintiff, both testified that they did not see him upon the track and did not know of the accident until some time afterwards. They are therefore left in this dilemma. If what they say is true, the jury may have found that they were guilty of negligence in not seeing the plaintiff. It is the duty of the engineer, or the fireman, * * * to look ahead, especially when passing through towns and villages, and where, as in this case, little children are constantly passing to and from school. At such a place it was clearly the duty of the engine driver to be on the alert. If, on the other hand, the engineer and fireman did see the plaintiff on the track, they should at least have endeavored to save him by blowing the whistle vigorously and ringing the bell. They did neither, and no warning of any kind was given to the plaintiff."

The facts in that case, however, show that the locus in quo was at a crossing, not a regular street crossing, but a place where residents of the neighborhood were in the habit of crossing to get to their mail, and where school children crossed four times a day, and which was used by the employés of the company. The use thus made of the tracks was open and notorious, and well known to the railroad officials. The facts in this case are entirely different, and no open and notorious use of the tracks had by long acquiescence or otherwise been permitted at the place of the accident, which made it the duty of those in charge of the engine to exercise great care in watching the tracks.

[14] In a number of cases courts have held that, when the evidence shows that there is reason to expect that persons may be upon the track at the place where an accident occurs, the company is liable for the neglect of the engineer to look out for them even if he did not see them. Chicago, etc., R. v. Cauffman, 38 Ill. 424; Chicago, etc., R. Co. v. Wymore, 40 Neb. 645, 58 N. W. 1120; Cincinnati, etc., R. Co. v. Smith, 22 Ohio St. 227, 10 Am. Rep. 729. But if no reason exists for expecting that persons may be on the tracks, and the engineer did not

see the person who was injured, then the company is not liable for his negligence in not looking out for him. Illinois Central R. Co. v. Noble, 142 Ill. 578, 32 N. E. 684.

The company may be liable to a trespasser for its failure to exercise reasonable care to discover and avoid injuring him when it has reason to anticipate his presence. But there is no evidence in this case which indicates that this defendant had any reason to expect any person would be upon the tracks where this accident happened.

We must assume, therefore, if the decedent was not discovered until the engine was within 30 feet of the decedent, the engine could not have been stopped in time to avoid striking the decedent, and if, in the brief moment it took a train running 40 miles an hour to cover 30 feet the engineer, in pulling on the emergency brake and trying to stop his train, actually failed to blow his whistle, his omission in that respect under the circumstances would not constitute such negligence as would justify a verdict against the defendant. There is no evidence in the case of any wanton negligence.

Judgment affirmed.